THE STATE BANK OF MIDLAND v. PATRICK BYRNE.

*Banks and banking—Collection of draft—Payment.*

A depositor is not relieved from liability upon an accepted draft, sent to his bank for collection, because of a custom existing between him and the bank, making it the duty of the bank, upon such acceptance, to give to the transaction the same effect as though the depositor had drawn his check for the amount of the draft, and pay the money to the drawer, although the depositor had at the time, and a few days later, when the bank closed its doors without making such payment, a balance to his credit exceeding the amount due on the draft.[1]

Error to Oakland. (Moore, J.) Argued June 13, 1893. Decided October 13, 1893.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*James H. Lynch* (*D. D. Jayne*, of counsel), for appellant.

*M. H. Stanford*, for plaintiff.

HOOKER, C. J. Plaintiff, a bank at Midland, in this State, on August 31, 1891, sent to the Milford State Bank, at Milford, in this State, a demand draft upon the defendant, Patrick Byrne, drawn by the Midland Salt & Lumber Co., the title to which was in the plaintiff at the time of forwarding. The defendant at that time, and for several years previous, had resided and been engaged in active business at Milford, and kept an account with the Milford State Bank. When drafts upon defendant were sent to the Milford State Bank for collection, Mr. Byrne, when he accepted the same, wrote his acceptance thereon in the usual form. Instead of paying the amount of the draft in cash, or drawing his check

---

[1] See *Sherwood v. Bank*, 94 Mich. 78.

for the same on his account to pay the draft, and taking the draft, his uniform custom had been to pass back to the bank the draft, after indorsing his acceptance thereon, and the same was treated and understood by both Mr. Byrne and the Milford State Bank as in all respects equivalent to a check, and when he settled with the bank, at intervals, these accepted drafts were treated by the bank as vouchers. When the draft in question was presented to Mr. Byrne on August 31, in accordance with this understanding or custom with the Milford bank, he wrote his acceptance on the same, passed it back to the bank, charged himself with the amount of the draft in his own pass-book, and paid no further attention to the matter. The draft in question was a demand draft, mailed from Midland on the 31st of August, and was on the same day presented and accepted by defendant. At the time of this transaction, up to and at the time of the bank failure, Mr. Byrne had on deposit a sum of money considerably in excess of the amount of this draft. The Milford bank closed its doors soon after this transaction. It did not remit to the Midland bank; in fact, it made no entries on its books, except a short memorandum in the collection register, and the accepted draft remained in the bank until its doors were closed, on September 9 following. The Bank Commissioner found the accepted draft among the papers of the bank, and returned the same upon September 14 to the plaintiff, who brought suit upon it. The only question in the case is whether the transaction between the defendant and the Milford bank was a payment of the draft.

The counsel for both parties recognize the Milford bank as plaintiff's agent for the collection of the draft. It is elementary doctrine that—

"An agent authorized merely to collect a demand, or to receive payment of a debt, cannot bind his principal by any arrangement short of an actual collection and receipt of

the money." *Ward v. Evans,* 2 Ld. Raym. 928; *Ward v. Smith,* 7 Wall. 451; *Pitkin v. Harris,* 69 Mich. 133; *Hurley v. Watson,* 68 Id. 531.

The most that can be claimed for this transaction is that the defendant, by accepting and delivering the demand draft, directed the Milford bank to pay the same, and charge the amount to his account, and that the bank promised to do so. As between them, it was, perhaps, understood that defendant had paid this draft, but it was in law no more than an attempted substitution of the bank for himself as debtor. Had the acceptance been a check, and the check drawn upon another bank or private person, the effect would have been in law the same. The law requires payment in money, and, as already shown, nothing else answers the purpose, except by agreement with the creditor, or his agent duly authorized to accept something else. As between defendant and his bank, it was clearly the latter's duty to honor his check (or acceptance, which, under their custom, was practically a check) by payment of the draft, but the creditor was no party to that transaction. The bank was plaintiff's agent to collect the money, not to make an arrangement by which it should assume the debt. A debtor who seeks to pay a debt through his debtor, thereby securing his own claim, acts at his peril, and is not exonerated from his obligation until his debtor performs his part by satisfying the creditor.

There are a few authorities which, at first blush, might be supposed to justify a different conclusion. Morse on Banking (section 305) is authority for the following:

"By custom, banks receive their own certificates of deposit as payment, and such custom will be judicially noticed by the courts, and will justify a collecting bank in receiving its own certificate of deposit in payment of paper it holds for collection; and the debtor is discharged, even though the bank fails before remitting. *And especially will this be so where the owner of the paper directed the*

*bank to remit by draft, for he is presumed to have intended
a draft of the collecting bank."*

The case of *Mortgage Co. v. Tibballs*, 63 Iowa, 468, is
the authority cited for this.    It bases the decision upon
the usage of banks, of which it says courts will take
judicial notice.    This was a certificate of deposit.    If there
is any usage by which certificates of deposit are so used, it
is plain that such certificates are but the promise of the
bank to pay; and, were it the certificate of deposit or cer-
tified check of another bank, it would be the mere
substitution of one obligation for another, and it is diffi-
cult to see any difference between such a case and one
where the certificate of deposit or certified check is that
of the collecting bank.    This holding is not supported by
citations.    Mr. Justice Reed dissents in an able opinion,
adhering to the common-law-rule.

Another case, that of *Welge v. Batty*, 11 Ill. App. 461,
is relied upon.    Here the debtor drew a check on the
collecting bank, having at the time a deposit sufficiently
large to cover it.    The check was received and draft
delivered, and the amount was charged against the debtor
on his bank account.    A draft was sent by the collecting
bank, but, before it got around, the bank failed.    This was
held to be a payment; the court saying that it would have
been an idle ceremony for the debtor to draw his money
out of the bank, and pay it back again to the bank.
Here, again, the court cites no authority to support its
decision.

The great weight of authority is against these cases.
The payment by check, certificate, or what not is not for
the convenience of the creditor, and he has no concern with
the fact that it is the custom of the bank to take checks in
payment.    The fact that a debtor has a credit at a bank is not
conclusive evidence that the bank has money with which to
honor his checks.    As in this case, the bank may be insolv-

ent when it receives the check, and there is no good reason apparent for permitting the depositor of an insolvent bank to pay his debt with worthless paper, thereby making his creditor a loser. No custom should be allowed to justify such a transaction, unless it be in a case where the creditor is connected with and a party to the custom. Many cases can be found where checks are received and operate as payment, but they are usually in suits between the creditor and the collecting bank, where a different question is involved.

Upon the undisputed facts of this case the plaintiff was entitled to the verdict, which the court properly directed.

Judgment affirmed.

McGRATH, LONG, and GRANT, JJ., concurred. MONT-GOMERY, J., did not sit.