105  349
109  423

## BANK OF MONTREAL, Appellant, v. HARVEY INGERSON.

**Banks:** COLLECTION AGENCY. A bank secured its indebtedness to a creditor bank by putting up, as collateral, notes signed by third persons, and payable to and at debtor bank. The course of business was that, when a note became due or was to be paid, it was sent for by debtor bank, and other notes sent in exchange therefor, if necessary to protect the indebtedness. It was not shown that creditor bank ever directly authorized debtor bank to collect a note which had not been returned to it. *Held*, that the debtor bank had no authority to receive payment for notes in the hands of creditor bank.

SAME. The fact that notes are payable at a bank does not of itself, in the absence of the notes, authorize the bank to collect anything thereon before maturity.

SAME. A bank holding notes as collateral to be sent to debtor bank for collection, and payable at a certain date, need not have the notes in the hands of the collecting bank before the date fixed for payment.

PAYMENT. A bank at which notes are made payable is not authorized after assigning the notes as collateral security to receive payment of the same before they are due, in the absence of the note.

SAME. A bank at which is made payable a note assigned by it as collateral security under an agreement by which it is to receive payment of notes so assigned at their maturity and give other notes as collateral, cannot bind its assignee by crediting on the notes before maturity an amount previously deposited by the maker, in such bank.

SAME. A bank at which a note is made payable has no authority to bind one to whom it has assigned the note by receiving payment on maturity of the note, where it has not received the note for collection.

ESTOPPEL. A principal is not estopped to deny unauthorized acts of its agent of which it had no knowledge.

**Action:** CONSOLIDATION Separate action on two notes against different makers and the same indorser are properly consolidated where only the indorser is served and there is nothing to show the plaintiff intends that the other parties shall be served.
*Lazier v. Horan*, 55 Iowa 75, overruled

*Appeal from Woodbury District Court.*—Hon. GEORGE
W. WAKEFIELD, Judge.

WEDNESDAY, MAY 11, 1898.

ACTION at law to recover the amount due on two
promissory notes. There was a trial by jury, and a
verdict and judgment for the defendant. The plaintiff
appeals.—*Reversed.*

*Black & Goodwin* and *J. S. Lothrop* for appellant.

*Marsh & Henderson* for appellee.

ROBINSON, J.—The plaintiff is a corporation of
Canada, and is doing business in Chicago, in the state
of Illinois. From the first part of the year 1888, until
June, 1893, it transacted business with the Union Stock
Yards State Bank of Sioux City, by lending to it from
time to time money for which it gave to the plaintiff its
certificates of deposit, secured by promissory notes,
which it received in the course of its business. The
notes in suit were taken by it, and sent to the plaintiff,
as a part of the collateral security given on account of
two certificates of deposit. The Sioux City bank failed
on the tenth day of June, 1893, and this action is for the
purpose of recovering of the defendant the amount due
on the notes.

I. One of the notes was for five thousand dollars,
and was made by D. N. Wheeler as principal and the
defendant Ingerson as surety. The other note was for
one thousand, four hundred and twenty-three dollars
and fifty cents, and was made by T. E. Leeper as prin-
cipal and the defendant Ingerson as surety. A
separate action was commenced on each note, in
which the makers were named as parties defend-
ant; but Ingerson was the only one who was served with

notice of either action, and he alone appeared in court. He filed an answer in each case, and then filed a motion to consolidate the two actions, which was sustained, and the two causes were thereafter tried as one. The appellant complains of the consolidation. Section 2734 of the Code of 1873 provided that, "whenever two or more actions are pending in the same court which might have been joined, the defendant may, on motion and notice to the adverse party, require him to show cause why the same shall not be consolidated, and if no sufficient cause be shown the same shall be consolidated." When the motion to consolidate was pending, the plaintiff did not make any showing in resistance, but merely excepted to the ruling and the order of consolidation. But the plaintiff claims that the actions should not have been consolidated, because each included a separate cause of action and a party who was not a party to the other action. To set out in a petition the name of a person as a defendant is not alone sufficient to make him a party to the action. The service of notice, or an appearance if there be no notice, is essential to give the court jurisdiction of the person named as a defendant. The actions in question were commenced and pending at the same time. It did not appear that the plaintiff intended to make any one but Ingerson defendant. As against him, the actions could properly have been joined, and no reason was shown why they should not be consolidated. Had Wheeler and Leeper entered an appearance in the action, and the cases had then been dismissed as against them, the cases could have been consolidated, under the rule of *Harwick v. Weddington*, 73 Iowa, 300. In the absence of a showing that the plaintiff intended to bring Wheeler and Leeper into court, the same rule applied, and the actions were properly consolidated.

II.   During the progress of the trial in the district
court, the plaintiff moved to strike from the files amend-
ments to the answer filed by Ingerson.    The amend-
ments contained material averments, and the motion to
strike was properly overruled.

III.    Both notes were by their terms payable at the
Union Stock Yards State Bank.    The smaller one was
payable on the tenth day of June, 1893, and the other
was payable on the twenty-fifth day of the same month.
Nearly four thousand dollars have been paid on the
larger note, but the other one is wholly unpaid.   They
were sent to the plaintiff a considerable time before
the failure, and, when that occurred, were in its posses-
sion.   In the evening of the day before the failure, after
banking hours, Ingerson and Leeper went to the Sioux
City bank, to arrange for the payment of the two
notes.    Ingerson stated that there was to be a
sale of cattle in Omaha the next day, and pro-
posed that about one thousand, eight hundred dollars of
the proceeds of the sale be placed to the credit of the
Sioux City bank in some bank in Omaha, to apply in
payment of the Wheeler note, and that the amount
required to pay the remainder due on the Wheeler note,
and the amount needed to pay the Leeper note, should
be charged to his account the next morning.   At that
time he had a credit in the Sioux City bank sufficient to
make the payments proposed.   Mr. Skerry, president of
the bank, told him that the notes were in Chicago, but
would be sent for, and that he could leave the money
required to pay them in the bank; and, when the notes
were received, they would be canceled; that the bank
would charge the amount required to pay them to his
account, and cancel the notes.   No check was given by
Ingerson, but it was agreed that the amount required
for the payment of the notes should be charged to his
account in the books of the bank the next day.   The

bank closed, however, before the entries were made. The Omaha deposit was made as agreed, and has been paid to the plaintiff, and is not in controversy. It is claimed by the appellee that the effect of his transaction with the Sioux City bank was to pay the remainder due upon the notes. The plan adopted and pursued respecting the collateral notes sent to the plaintiff was substantially as follows: The plaintiff received them with knowledge of the fact that they were payable at the Sioux City bank, and would be collected by it, and that some of them would be paid before they were due. It was the custom of the Sioux City bank to send for the notes before or at about the time they matured or were to be paid, and to replace them with other notes, so that the amount of collateral notes held by the plaintiff to secure a certificate of deposit should be kept good. The Sioux City bank collected all the notes, and sometimes received the amount due on such a note before it was due, and while it was in the possession of the plaintiff. The money so collected was not sent to the plaintiff, but when necessary to maintain the required amount of collateral notes, new notes were sent to the plaintiff. The collections were always made for the Sioux City bank. Mr. Skerry testifies that, when he arranged with the plaintiff to borrow money of it, he stated to it that the notes must be at his bank for payment; that some of them would be paid before they were due, and in such cases the Sioux City Bank "would send other paper, take the money from the farmers, and send it," to the plaintiff. This is the only evidence which we find in the record which can be claimed to show that the Sioux City bank was authorized to collect notes which belonged to the plaintiff; but when that statement is considered with other evidence, and with the course of dealing of the parties, it does not show that such collections were authorized. It is true that the plaintiff sent

to the Sioux City Bank collateral notes whenever they were requested; but, when that was done, new notes were sent with the request, in exchange for the notes to be returned, or a sufficient amount of collateral notes remained to secure the certificate of deposit, on account of which the notes returned had been held; hence, when collateral notes were returned, they became the property of the Sioux City bank, and were always collected as its property. It is not shown that the plaintiff ever authorized the Sioux City bank to collect a note which had not been returned to it. The evidence shows that the plaintiff never made any objections to what the Sioux City bank did, but, as it is not shown that the plaintiff ever had any knowledge that money was collected by the Sioux City bank on notes which it had not received, the omission to make objections, if such collections were in fact ever made, is of no effect. Not only does the evidence not show that the Sioux City bank was in fact authorized to collect notes not in its possession, but it does not show that the plaintiff is estopped to deny that authority to do so was given.

So far as the evidence submitted shows, the authority, if any, which the Sioux City bank had to receive payment for the notes in suit on the ninth and tenth days of June, 1893, must be found in the notes. Each of those was, by its terms, payable at the Sioux City bank on a date fixed; not "on or before" that date. The plaintiff was not under obligations to leave either note at the place of payment before the date fixed for payment. It may be said with some degree of plausibility, in view of the decision in *British & American Mortgage Co. v. Tibballs*, 63 Iowa, 468, that the agreement made by the defendant with Skerry would have been effectual to pay the note had the Sioux City bank been authorized to receive payment at the time the

agreement was made, and if it then had the money with
which to make the payment; but the fact that the notes
were made payable at the Sioux City bank did not, in
the absence of the notes, under any permissible view of
the law, authorize the bank to collect anything on either
note before it was due; and it is at least doubtful if the
evidence shows that the bank had the money with which
to make the payment, although the defendant had an
ample credit for that purpose.    Conceding to the
defendant all that can be claimed from the evi-
dence, it only shows that, on the ninth day of
June, the Sioux City bank agreed to charge the defend-
ant with an amount necessary to take up the notes, and
to cancel the notes, or, in other words, to accept in pay-
ment of the notes a certain amount of the claim which
Ingerson held against it for deposits he had made.   Not
only was the agreement not carried out, but the notes
were payable in money only, and the bank had no right
to accept in payment of the notes a claim against itself.
*Bank v. Byrne*, 97 Mich. 178 (56 N. W. Rep. 355);
*National Life Ins. Co. v. Goble*, 51 Neb. 5 (70 N. W.
Rep. 503).    The case of *British & America Mortgage
Co. v. Tibballs, supra*, recognized that rule, but held
that, as the bank in question in that case was paying
all its certificates of deposit at the time it accepted one
of is certificates in payment, it would have been a vain
and unnecessary thing to draw the money on the certifi-
cate from the bank, and then pay it back to the bank.
If the Sioux City bank was without money on the ninth
and tenth days of June to make the payment required,
the transaction which occured would not have operated
as a payment of either note; and, unless the bank was
authorized to collect notes before they were received for
collection, what was done, even if it be true that at
that time the Sioux City bank had the necessary money,

would not have had the effect to pay the note due on the twenty-fifth day of June.

IV.   If, in view of the fact that the transaction of June 9th was after business hours, it should be treated as of the tenth, when one of the notes became due; and, if the Sioux City Bank then had the money with which to pay that note, there arises the question: Did the Sioux City bank have authority to collect the note when it was due, although it had not been received for collection?   The defendant, relying upon the case of *Lazier v. Horan*, 55 Iowa, 75, insists that the question must be answered in the affirmative.   That case does hold that, if a promissory note is made payable at a bank, payment made to the bank on the date of the maturity of the note is effectual as payment on it, although it is not at the time in the possession of the bank.   It is to be noted that the case was decided with but limited time for the examination of the authorities, and that no authority was cited against the conclusion reached, and no adjudicated case exactly in point was cited in support of that conclusion, although reference was made to certain text-books.   That case was referred to in *Callanan v. Williams*, 71 Iowa, 365; and, after citing *Adams v. Improvement Commission*, 44 N. J. Law, 638, this court said it was not disposed to extend the rule of *Lazier v. Horan*.   We held in *Englert v. White*, 92, Iowa, 97, and *Klindt v. Higgins*, 95 Iowa, 529, that a person at whose office promissory notes were in terms made payable was not, by that fact, authorized to receive payments on them, although it appeared that he was in the habit of loaning money for others, and collecting from the borrowers and paying to the lenders money on account of loans he made.   It is somewhat difficult to distinguish on principle between the right of a bank at which a note is to be

paid to act for the holder of the note in receiving payment and the right of an agent who is engaged in the business of negotiating loans which are made payable at his place of business, and who habitually collects payments made on such loans, to act for those to whom the payments were intended to be made. In view of the various decisions of this court, and because of the importance of having in all the states uniform rules for the regulation of commercial transactions, we feel justified in re-examining the rule announced in *Lazier v. Horan.* The conclusion in that case was based chiefly upon the statement as to the law made in section 228 of Story on Promissory Notes, as follows: "If, by such omission or neglect of presentment and demand, he [the maker or acceptor] has sustained any loss or injury,—as, if the bill or note were payable at a bank, and the acceptor or maker had funds there at the time which have been lost by the failure of the bank,—the acceptor or maker will be exonerated from liability to the extent of the loss or injury so sustained." It is no doubt true that, under some circumstances, the loss of money deposited in the bank where a bill or note was made payable might fall upon the owner; but, when that is the case, the deposit must have been made, not only for the benefit of the holder of the paper, but under such circumstances as to make the bank his agent, or to estop him to deny its agency. The rule is well settled, and was recognized in *Lazier v. Horan,* that the acceptor of a bill of exchange, or the maker of a promissory note, payable at a bank or other specified place, is not required to present the bill or note at the place designated for payment, in order to recover in an action against the acceptor or maker. *Armistead v. Armistead,* 10 Leigh, 512. See, also, 3 Randolph Commercial Paper, section 1117. The effect of a failure to make such presentation and demand for

payment is to defeat the right of the holder to recover damages and costs in case the acceptor or maker had the money required to discharge the bill or note at the place designated for payment when the instrument was due. But in such a case, in order to avoid liability for damage, interest, and costs, it is necessary for the acceptor or maker, not only to maintain the tender, but to continue it in court. *Carley v. Vance*, 17 Mass. 389; *Wolcott v. Van Santvoord*, 17 Johns. 248; *Armistead v. Armistead*, 10 Leigh, 512; 3 Randolph Commercial Paper, section 1119.

The case of *Bank v. Zorn*, 14 S. C. 444, is sometimes referred to as sustaining the doctrine that money deposited at the place at which a bill or note is made payable at the time it is due will have the effect to discharge the note. It appears that a note was involved in that case which was by its terms made payable at the office of the payee, who was a cotton factor and commission merchant. The note was transferred by the payee to a bank to be held by it as collateral security, and, under some arrangement between the bank and the payee, was not presented for payment at the place of payment designated in the note. The maker had a balance with the payee at the time the note matured, sufficient to pay it; and, had it been duly presented, it would have been paid. The maker of the note afterwards affected a settlement with the payee, which included the note. That was not delivered at the time, but the payee agreed to procure it, and send it to the maker, but failed to do so. It was held that the note was discharged, although no specific reason was given for that conclusion. It may well have been based on the peculiar facts of the case, since it appeared that the payee of the note was authorized to make collections of notes which it had deposited as collateral security, and did so, but failed to apply the collections

in all cases in payment of the indebtedness for which
the collateral notes were held as security.   Had that
been done, the note there in suit would have been paid.
Some authorities were cited with reference to demand
for payment, and something was said on that branch of
the case to the effect that if the money was deposited
"according to the terms of the note," and was lost
because of the failure of the holder to demand payment,
the loss would be on him.   Although the case is in prin-
ciple clearly distinguishable from *Lazier v. Horan*, yet
it tends to support that case.   The same is true of some-
thing said by one of the three judges who gave opinions
in *Rhodes v. Gent*, 5 Barn. & Ald. 244; but the point was
not involved in the case.   In *Palmer v. Hughes*, 1
Blackf. 328, it was held that demand for the payment
of a note payable at a specified place was necessary
before an action could be maintained upon it against
the maker; but the rule stated was contrary to the
weight of authority, and was changed in Indiana by
statute.   See *Glatt v. Fortman*, 120 Ind. 384 (22 N. E.
Rep. 300).   It was said in *Caldwell v. Evans*, 5 Bush,
380, that "the making of a note payable at a bank does
not of itself constitute such bank an agent of the payee
to receive the money, but it is a mere designation of
a place where both the paper and the funds to take it
up will be on the day it is due.   Therefore, to make the
bank the payee's agent, either the paper must be
indorsed to or deposited with it."   The case of *Adams
v. Improvement Commission*, 44 N. J. Law, 638 reviews
the authorities at considerable length, and is unusually
well considered.   The conclusion reached by the court
is stated as follows:   "The contract of the maker,
acceptor, or obligor is to pay the holder of the paper, and
the place for payment is designated simply for the con-
venience of both parties.   *   *   *   If maturing paper
be left with the banker for collection, he becomes the

agent of the holder to receive payment; but, unless the banker is made the holders's agent by a deposit of the paper with him for collection, he has no authority to act for the holder. The naming of a bank in a promissory note as the place of payment does not make the banking association an agent for the collection of the note or the receipt of the money. No power, authority, or duty is thereby conferred upon the banker in reference to the note, and the debtor cannot make the banker the agent of the holder by simply depositing with him the funds to pay it with. Unless the banker has been made the agent of the holder by the indorsement of the paper or the deposit of it for collection, any money which the banker receives to apply in payment of it will be deemed to have been taken by him as the agent of the payor." In *St. Paul National Bank v. Cannon*, 46 Minn. 95 (48 N. W. Rep. 526), it appeared that money due on a note which was payable at a certain bank was deposited in the bank at the maturity of the note, with directions to pay it. The court said: "Although the note was by its terms payable at the Bank of Minnesota, the mere depositing the money in that bank, in order that it might be applied in payment of the note, did not constitute a payment of it. In such a case the bank receiving the money is to be regarded as the agent of the person paying it, the holder of the note not having deposited it at the designated place for collection or payment. The law is well settled." In *Hills v. Place*, 48 N. Y. 520, a question arose as to the payment of a note which was made payable at a specified bank, and it was said: "The bank was in no sense the plaintiff's agent for the collection of the note or the receipt of the amount due thereon, or otherwise. It was named in the connection in which it was used merely as the place where its business was transacted for the purpose of making payment of the note there, without conferring

or intending to confer any power, authority, or duty on
the association itself in reference thereto." The rule of
these cases finds abundant support in the authorities.
See *Cheney v. Libby*, 134 U. S. 68 (10 Sup. Ct. Rep. 498);
*Ward v. Smith*, 7 Wall, 447; *Williamsport Gas Co. v.
Pinkerton*, 95 Pa. St. 62; *Wood v. Trust Co.*, 41 Ill. 267;
*Grissom v. Bank*, 87 Tenn. 350 (10 S. W. Rep. 774);
*Turner v. Hayden*, 4 Barn. & C. 1; *Walton v. Hender-
son*, Smith (N. H.) 168; 1 Daniel. Negotiable Instrument,
sections 325, 326; 3 Randolph Commercial Paper, sec-
tion 1119; Tiedeman Commercial Paper, p. 539, section
310; 3 Am. & Eng. Enc. Law (2d ed.), 803; 18 Am. &
Eng. Enc. Law, 199.

A careful examination of the authorities shows
that the case of *Lazier v. Horan* is almost alone in hold-
ing that payment of the amount due on a promissory
note to the bank designated therein as the place of pay-
ment, at the maturity of the note, will be effectual as
a. payment of it.   The great weight of authority is
against that rule, and we are constrained to say that
it does not appear to us to be well founded in reason.
The specifying, in a bill or note, of a place for its pay-
ment, is for the convenience of the parties to it, and
does not alone create an agency in the person who does
business at the designated place to receive money for
the holder of the paper.   It may be necessary to demand
payment at the designated place to aid in fixing the
liability of the drawer or indorsers.   Byles. Bills (7th
ed.) 219; Tiedman Commercial Paper, section 310.   But
that is not necessary to fix the liability of the acceptor
or maker, and, as to him, the paper merely does what
it purports to do; that is, it designates a place where
payment may be made, not a person other than the
holder to whom it may be made.   The effect of the con-
clusion we reach is to overrule so much of the case of
*Lazier v. Horan* as is not in harmony with what we have

said. In the case of *Wolford v. Young*, 105 Iowa, *post*, it was found that the company which transacted business at the place of payment designed in the note was the agent of the holder, and the case is not in conflict with anything we have said in this case. The evidence fails to sustain the judgment of the district court, and it is REVERSED.