CORPORATION COMMISSION v. BANK.

(Filed March 28, 1905).

*Banks—Collections—Insolvency—Distribution of Assets—
Trust Fund—Creditor and Debtor.*

1. Where paper is sent to a bank for collection and so restricted by
   endorsement, after collection made and proceeds mingled with
   the general funds of the bank, the relationship between the
   depositor and the bank becomes that of creditor and debtor,
   and on assignment, by reason of insolvency, the holder of such
   a claim can only share in the assets *pro rata* with general
   creditors.

2. While a bank is a going concern, it has a right to make collections
   and it commits no breach of trust in mingling the proceeds
   thereof with its general assets according to the general cus-
   tom of banks, and when so mingled, the character of a trust
   fund ceased by that act and a new obligation arose, to pay or
   remit, not the specific money collected, but out of its general
   funds.

State of North Carolina, on the relation of the North Caro-
lina Corporation Commission against the Merchants and
Farmers Bank of Dunn, N. C., W. A. Stewart, receiver.

In the matter of the claim of the Voight Milling Company
against the assets of the Merchants and Farmers Bank of
Dunn, N. C., now in the hands of W. A. Stewart, receiver,
heard before *Judge B. F. Long,* at the November Term, 1904,
of the Superior Court of HARNETT County. The defendant,
the said bank, W. A. Stewart, receiver, being in liquidation,
the claimant, the Voight Milling Company, duly presented
its claim to the receiver demanding priority of payment out
of its assets. From a judgment of the Court against the
claimant, he excepted and appealed.

*Godwin & Davis,* for the claimant.
*H. L. Godwin,* for the receiver.

HOKE, J., after stating the case. The Voight Milling Company, holding a claim against the defendant bank, demanded priority of payment from the assets of the bank, and the receiver to whom the matter was referred disallowed this demand and held that the claimant was only entitled to share *pro rata* in such assets as a general creditor. The Judge below sustained the ruling of the receiver and the Voight Milling Company excepted and appealed.

The facts upon which this ruling was made are, in substance, as follows: Just prior to the suspension of the Merchants and Farmers Bank, the Voight Milling Company forwarded to it for collection a draft in the sum of $693.91, to which was attached a bill of lading covering a shipment of a car-load of flour to the Purdie-Hooks Company of Dunn, N. C., drawee of said draft. On February 8, 1904, the bank delivered the draft and bill of lading to the drawee, accepting therefor a check of the drawee against a deposit in the bank. On February 9, 1904, the bank voluntarily closed its doors because of insolvency and for the purpose of winding up its affairs through a receiver. The appellant was not a depositor of the bank. The bank did not account, nor make any attempt to account, for the proceeds of said collection, and at the close of business that day (February 8) there was more than sufficient currency on deposit in the bank to have accounted for the collection, and at all times of the transaction between the appellant and the bank, the bank was in an insolvent condition. On the acceptance of the drawee's check and the surrender of the draft and bill of lading to the Purdie-Hooks Company, the proceeds of such collection were mingled with the general funds of the bank, and no sum or amount of money was separated or set apart from the other funds of the bank to the credit or for the benefit of the Voight Milling Company. The proceeds of such collection went into

the general assets of the bank and were passed into the hands of the receiver.

As disclosed in the foregoing statement, the transaction between the Purdie-Hooks Company and the bank amounted to a payment of the draft. Morse on Banking, sec. 248*a*, citing *Sayles v. Cox,* 95 Tenn., 583. According to the decisions of this State, and well considered authorities elsewhere, it is held where paper is sent to a bank for collection and so restricted by endorsement, after collection made and proceeds mingled with the general funds of the bank, the relationship between the depositor and the bank becomes that of creditor and debtor, and on assignment, by reason of insolvency, the holder of such a claim can only share in the assets *pro rata* with general creditors. *Packing Co. v. Davis,* 114 N. C., 343; *Dowd v. Bank,* 38 Fed. Rep., 172; *Billingsley v. Pollock,* 69 Miss., 759; *Slater v. Oriental Mills,* 18 R. I., 352.

The doctrine is stated in 3 Am. & Eng. Enc. (2 Ed.), 819, as follows: "Although a bank which has received paper for collection is, until collection made, the agent of the depositor, a different relation exists after the collection has been made. According to the established custom of banks, the proceeds of paper deposited for collection are mingled with the general funds of the collecting bank and are used by it in the same manner as its other funds. The depositor thereupon becomes the creditor of the bank for the amount so collected; and the debtor, the collecting bank, in consideration of the right to use the money, undertakes and is bound to refund it." "It follows," says the same authority at page 820, "from this change of relationship, that when the collecting bank becomes insolvent, the depositor of the paper collected has no priority in the moneys that have been collected in this way, nor any lien thereon as against general creditors."

Of course if the proceeds of such collection could be identified or traced into some specific property, a different principle

would prevail, but no such facts existed here. It is expressly stated that the proceeds of this collection were mingled with the general funds of the bank, and it is not claimed that any part of such collection can be identified or traced into other specific property or investments.

We are asked to sustain this demand on the idea that the proceeds of this collection constituted a trust fund, and, when traced into the general assets of the bank, a right to priority of payment arises in favor of the claimant; and we are referred to the case of *McLeod v. Evans,* 66 Wis., 401, and other authorities in support of this position. The proceeds were a trust fund and would be so dealt with as long as the same were kept separate and could be followed or identified, but after collection made and the fund was mingled with the general assets of the bank, its character as a trust fund ceased by that act, and a new obligation arose—the obligation of the collecting bank to pay or remit, not the specific money collected, but out of its general funds, most usually by check on some other portion of its assets. The bank committed no breach of trust in so mingling the proceeds of this collection with its general assets. That was the general custom of banks in dealing with such collections, and the claimant will be held to have forwarded his draft with this custom in mind. The bank then had a right to mingle this fund with its general assets. Its character as a trust fund thereby ceased, and the default alleged against the bank is not therefore a breach of trust, but a failure to pay a debt, and the holder of such a claim can only share *pro rata* as one of the general creditors.

It is this mingling of the assets according to the custom of banks, and of right, in pursuance of its contract for collection expressed or implied, that distinguishes cases of this character from many of those cited by counsel. They were, in the main, cases of individual trustees with the duties of trustees still upon them and while their obligations as such

in reference to the trust funds were still existent. Here, the character of trust fund had ceased. The bank was under no obligation, as trustee, to keep this fund separate; on the contrary, in carrying the proceeds of this collection into its general assets, the bank acted according to the general custom of banks and as both parties contemplated that it would act. There was therefore no breach of trust and the only obligation resting on the bank was to remit when called on, or in the usual course of business, out of its general funds.

The case of *McLeod v. Evans, supra,* is to the effect contended for by the appellant, but this case was overruled by a decision of the same court in *Silk Co. v. Flanders,* 87 Wis., 237, and the general tenor of this last opinion would seem to show that this able Court is in accord with the principle here declared.

As said in *Bank v. Bank,* 148 Mass., 553 : "Upon the collection of a draft or check, the Fidelity Bank was not required to keep the proceeds by itself as the plaintiff's property, but might mingle it with its own money and make itself the plaintiff's debtor for the amount received. As soon as the proceeds became a part of the funds of the Fidelity Bank under this arrangement, the plaintiff's right to control it as specific property was gone, and the plaintiff had, instead, a right to recover a corresponding sum of money."

We are not inadvertent to the fact that the bank is said to have been in an insolvent condition. While the bank was open and doing business, and in the absence of any allegation or suggestion of fraud or collusion between the bank and the debtor, the transaction was a payment, and the same results would follow whether the bank was solvent or insolvent. It is not stated that the officers of the bank were aware of its insolvency, and we are not discussing here the effect of fraudulent conduct on the individual officers of the bank. We are seeking to lay down a fair and just rule for the disposition

of the property of an insolvent among its creditors.  As to them, while the bank was a going concern, it had a right to make the collection and the same right to follow the general custom of banks and carry the proceeds into its general assets. The claimant gave this authority and took this risk when he sent his paper for collection, and we do not think the fact that he has selected a faithless agent gives him any right to priority over other creditors when he can no longer identify his property.  Of course, after a bank has suspended business and closed its doors a different rule prevails.  But the facts of this case do not require that this rule should be dwelt upon.

We are of opinion that on principle and authority the claimant can only share in the assets *pro rata* as one of the general creditors, and the judgment of the Court below is

Affirmed.