## BOWEN-OGLESBY MILLING COMPANY *v.* HALL.

### Opinion delivered January 25, 1926.

1. SALES—PAYMENT OF DRAFT TO COLLECTING BANK.—Where a carload of merchandise was shipped with draft attached to the bill of lading, and the purchaser, having sufficient funds in the bank to which the shipper sent the draft for collection, gave his check on such bank, which marked the draft "paid," but never forwarded the money to the shipper, *held* that, if the bank did not have the money to pay the shipper, its act in marking the draft paid did not constitute payment.

2. SALES—PURCHASER'S LIABILITY.—Where an order for a carload of merchandise stipulated that the purchaser should be responsible for final payment to the shipper, it was error to charge the jury that such stipulation would not render the purchaser liable if the bank to which the purchaser made payment and which failed to forward the money to the seller was in fact the latter's agent.

Appeal from Polk Circuit Court; *B. E. Isbell,* Judge; reversed.

*Norwood & Alley,* for appellant.

*Pipkin & Frederick,* for appellee.

SMITH, J.   On August 7, 1923, appellant's traveling salesman took a written order from appellee for a car of flour and feed to be shipped within sixty days. The amount of the flour was designated in the order, and it was provided in the order that the balance of the car should be in feed at market price when ordered out. The car of flour and feed was shipped to and received by the appellee about October 9, 1923, and the principal question of fact in the case is whether the shipment was made under this written order or pursuant to a verbal order.

The written order covered 10,000 pounds of flour, in sacks of 48 pounds each, at the price for $5.60 per barrel. This order, which was signed by appellee, contained the following recital: "Bal. car in other feed at market price when ordered out. Terms of payment A. D. draft with shipper's order bill of lading attached through Hatfield Bank of Hatfield. Where buyer designates the bank through which draft is to be presented, and to

whom payment is to be made, buyer will be responsible for final payment to the seller. Time of shipment 60 days, destination Hatfield.''

The car of flour and feed amounted to $935, and a draft for that amount was drawn on appellee, with bill of lading attached, and sent to the Bank of Hatfield, at Hatfield, for collection. Appellee was a depositor in this bank, and had on deposit with it to his credit a sum of money in excess of the draft, and when the draft was presented to him he drew a check on the Bank of Hatfield for the amount of the draft, which was marked "paid" by the cashier of the bank. The bill of lading was surrendered by the bank to appellee, and, upon the presentation of the bill of lading to the railroad company, the consignment of flour and feed was delivered by the carrier to appellee.

The following testimony was offered on behalf of appellant, the plaintiff below: A written order for a car of flour and feed was received and accepted. The order was not conditional. The phrase, "when ordered out", appearing in the order, meant that the purchaser had the right to order the shipment made at any time within sixty days from the date of the order, and to have the flour charged at a price not exceeding the market quotation at the time of the acceptance of the order. Telephone direction was given by appellant on October 1, 1923, to ship pursuant to the written order, at which time specifications as to character of feed to complete the car were given, and across the face of the order the words, "Filed 10-1-1923," were written.

The cashier of the bank testified that the draft was marked "paid" when the bill of lading was surrendered, but the draft was never charged to appellee's account. The cashier admitted that the bank had never remitted the amount of the draft to appellant, and, when asked if the bank was short of funds, answered "that was the reason of the delay." On the cross-examination of the cashier he was asked if appellee had sufficient money on

deposit with the bank to pay the draft, and the cashier answered that appellee had on deposit a sum in excess of the draft.

The bank closed its doors on October 17, 1923, and was taken over by the Bank Commissioner, but neither appellant nor appellee ever filed the draft in question as a liability to be allowed against the bank.

Appellee testified that the consignment in question was shipped under a verbal order which did not relate to the written order, and that he was not asked to specify, and did not specify, the bank through which the draft was to be presented.

The manager of the appellant company testified that it was the custom of his company to choose its own bank for collection of drafts, but where the selection was made by the consignee it was specified in the order that the buyer would be responsible for the final payment. The order of August 7, 1923, contained a provision to that effect.

Three instructions were given, one at the request of appellant and two at the request of appellee. The instruction given at the request of appellant reads as follows: "You are instructed that if you believe from a preponderance of the evidence that the defendant gave the plaintiff a written order for a car of merchandise to consist of 10,000 pounds of flour and balance of car to be filled with feed, at market price when ordered out, and the defendant telephoned plaintiff what kind of feed to fill the car with, and the shipment was made pursuant to such written order and telephone directions, and that defendant designated the Bank of Hatfield through which draft was to be presented, and defendant agreed to be responsible for final payment to plaintiff, and the draft was drawn and presented as directed, and plaintiff never received payment, you will find for the plaintiff."

Appellant insists that the facts upon which this instruction was predicated are undisputed, and that it was error on the part of the court not to direct a verdict

in its favor. One of the errors assigned in the motion for a new trial is the insufficiency of the evidence to support the verdict in appellee's favor.

We think this instruction correctly declares the law, and, if we could say that the facts were as there hypothesized, appellant would have been entitled to a directed verdict. In other words, if the shipment was, in fact, made under the written order of August 7, appellant was entitled to a directed verdict, because this order did direct the bank through which the draft should be paid, and the order specified, when this was done, that the buyer would be responsible for final payment to the seller. Under the terms of this order, which appellee admits signing, it is unimportant to determine whose agent the bank was, as the buyer agreed to become responsible for final payment to the seller. But, inasmuch as appellee testified that the shipment was under a verbal order, and not under this written order, we cannot say that a verdict should have been directed for appellant on the theory stated.

Appellant insists that it was entitled to a directed verdict because the undisputed testimony shows that when the draft was marked paid the bank did not have money enough on hand to pay the draft. It may be said that, if we could find that the undisputed facts support appellant's contention in this respect, we would hold that it was entitled to a directed verdict on that account, but the answer of the cashier as to the funds of the bank on hand at the time the draft was marked "paid" is reasonably susceptible to the construction that it had money in hand in excess of the draft. If he meant to say only that appellee's deposit at the bank exceeded the draft, but that the bank itself did not have funds in hand exceeding the amount of the draft, then there was no payment.

Appellee's theory of the case is that the bank was the agent of the shipper; that the collection was in fact made when the draft was marked "paid"; that this was in legal

effect an assignment of so much of the money as appellee had on deposit from the credit of appellee to that of appellant, and that this was a payment of the draft, and that the sum thus assigned became the money of appellant, and the bank became its agent to remit the collection, and any loss occasioned by the failure of the bank to remit should be sustained by the party whose agent the bank was. To sustain this theory of the case, and in support of the instructions given in his behalf, appellee cites the case of *Darragh Co.* v. *Goodman,* 124 Ark. 532. In this case it was stated that "it is uniformly held that an agent having for collection obligations due to his principal, can receive only money in payment, unless otherwise directed, and these principles of course apply to banks holding drafts for collection."

There is no testimony whatever that appellant sent the draft to the bank as a deposit. There was no intention on appellant's part of becoming one of the bank's general creditors by becoming a depositor. There was therefore no authority whatever on the part of the bank to attempt the collection by charging the draft to appellee and crediting the proceeds thereof to appellant. So that, if the bank did not have money on hand with which the draft could have been paid, there was never, in fact, any payment, although the draft was marked "paid."

Instruction numbered 1 given at appellee's request required on this question only that the jury find that appellee's deposit exceeded the draft. This was not sufficient. It was essential also that the bank have in hand money exceeding the draft.

Over appellant's objection the court gave an instruction numbered 2, reading as follows: "You are instructed that the fact that the signed order of the defendant contained a clause stating that defendant should be responsible for final payment to the plaintiff does not change the fact that payment to the bank would be final payment to the plaintiff if said bank was plaintiff's agent."

This instruction is in conflict with what we have herein said. It permits the jury to find that final payment was made if the bank was appellant's agent, although the signed order contained a clause making appellee responsible for final payment. The instruction defeats the whole purpose of this clause in the order, and for the error in giving this instruction the judgment will be reversed, and the cause remanded for a new trial.