SCOTT COUNTY MILLING COMPANY *v.* WEEMS.

Opinion delivered July 1, 1929.

*Bailey & Bailey* and *Cooley & Adams*, for appellant.
*J. G. Waskom*, for appellee.

MEHAFFY, J. The appellant, a Missouri corporation, is engaged in the production and shipping, wholesale, of flour, grain and kindred feedstuffs. Two or more years prior to March 4, 1927, it had dealt with the appellee, who was engaged in the mercantile business at Rivervale, in Poinsett County, Arkansas. Shipments had been made from appellant to appellee in carload lots. The cars shipped were consigned to Rivervale, Arkansas, and from twelve to fifteen shipments were made each year. At the beginning of their relations appellant asked appellee where he did business, and appellee told him at the First National Bank of Lepanto. Thereafter drafts were drawn by appellant for each shipment, with bill of lading attached, through the First National Bank of Lepanto, Arkansas. All of these drafts had been regularly and promptly paid, except the one here in controversy.

When the draft and bill of lading reached the bank, the bank would notify the appellee, he would call and get the bill of lading, and the bank would charge the amount to appellee's account and remit to appellant. Appellee never gave a check and never gave money in payment of draft, but directed the bank always when it received a bill of lading to charge the draft to his account. Appellee had at all times more than enough money to pay the draft in question, and there was at all times more than enough cash in the bank to pay the draft. The draft

936

in controversy amounted to $865.10. When the bill of lading and draft came for the shipment on February 14, 1927, a member of the firm of appellee called the bank on the phone and directed them to deliver the bill of lading to George Reed for appellee, and directed the bank to charge the draft to the account of J. L. Weems & Son. This was what was always done; the bill of lading was delivered, and the car received by appellee.

The records of the bank do not show that appellee's account was charged with the draft and do not show that the draft was marked paid, and the bank never remitted to appellant. The bank had never required a check or a formal order from appellee to charge his account with the amount of the drafts and to deliver the bill of lading. They treated the draft as a check. When the shipment involved in this suit was made on February 14, 1927, the bank received the following letter from the appellant:

"Please find our draft No. 3564 for $865.10, drawn on J. L. Weems & Son. We are handing you this item as our agent only to collect and hold the funds collected in trust from and to be accounted for to us, and not to be mingled with any other funds, but, when collected, to be held by you as our trustee until paid to us. Please remit to us in St. Louis, New York or Chicago exchange."

The bank was closed on March 4, 1927, and appellant demanded payment of the amount of the draft from appellee, and payment was refused. Suit was brought in the circuit court, asking judgment for the amount of the draft for the goods shipped, and appellees answered, denying the indebtedness, and alleging that the bank was the appellant's agent, and that there was at all times sufficient money in the account of the appellee to pay the draft, and that appellant could not recover a loss caused by the neglect of its agent.

At the close of the testimony both parties requested the court to direct a verdict in their favor, and the court directed a verdict in favor of appellee, and judgment was entered accordingly. Appellant filed its motion for new

trial, which was overruled, and an appeal is prosecuted to this court.

Appellant states that the question here presented is whether the drawee is liable to the drawer for the amount of the draft when the bank to which it was sent for collection at drawee's suggestion, if not at his request, fails to remit the proceeds, charge the drawee's account, mark the draft paid, or do any other act indicating payment after the attached bill of lading was surrendered, and before the bank's doors were closed eleven days thereafter. We do not agree with appellant that the draft was sent to the bank for collection at appellee's suggestion. On the contrary, the undisputed proof shows that appellee made no suggestion or request about the sending of the draft or to whom it was to be sent, but the appellant simply asked appellee where appellee did business, and he was told that appellee did business at the First National Bank of Lepanto. The appellee had never at any time, so far as the proof in this case shows, made any suggestion or request that the drafts be sent to the bank at Lepanto. The appellant made the bank its agent when it inclosed the draft and bill of lading; it stated to the bank that the draft was handed to it as agent of appellant only to collect and hold the funds collected in trust and to be accounted for to appellant, and not to be mingled with any other funds, but, when collected, to be held in trust by trustee for appellant. Appellant did not communicate with appellee, but communicated with the bank, its agent.

It is earnestly insisted that an agent having for collection obligations due to its principal can receive only money in payment, unless otherwise directed, and that these principles apply to banks holding drafts for collection. We agree with the appellant that this is the general rule, but, in the instant case, it has no application, because the appellant constituted the bank its agent, sent the bill of lading and draft to its agent just as it had for more than two years, and the bank delivered to the appellee the bill of lading just as it had each month for more

than two years, and was directed to charge appellee's account with the amount of the draft. When the draft and bill of lading came to the bank and the bank delivered the bill of lading to appellee on appellee's direction to charge the amount to his account, having ample funds to pay the draft, this was an appropriation of appellee's funds in the bank of the amount of the draft. Appellee not only did all that he ever did when he received a bill of lading, but all that he could be expected to do.

The cashier of the bank testified that they always treated the drafts as checks, and that the appellee never paid either money or check, but that it was always handled just as it was in this instance. The bill of lading would be delivered to the appellee, and he would order the bank to charge his account with the amount.

In the trial of the case the court asked Weems the following questions: "Q. Mr. Weems, how came them to draw these drafts through the First National Bank of Lepanto? A. Mr. Bowman said that was his way of doing business, and he preferred to do it that way. Q. How came them to select the First National Bank of Lepanto? A. Well, they asked me where I did business, and I told them."

R. M. Johnson testified that he had been in the banking business for thirty-five years, and it is the custom to treat a draft, under the circumstances of this case, as a check; it serves both as a check and a receipt.

J. L. Weems, one of the appellees, testified: "That I just went to the bank and called for the bill of lading, and they would hand me the bill of lading and charge the draft to me, and the draft would come out exactly as a check. I never did pay for it with money. They would charge it just like they would a statement, and the draft would be like a check at the end of the month."

The witness identified fourteen monthly statements received from the First National Bank of Lepanto with a draft attached to each one, showing the several drafts

to have been used and treated as checks for the items charged on said ledger sheets.

Minnie White, the cashier of the bank, testified that she did not remember ever having a check from Weems, but they used a draft as a check, and charged it to his account. The bank did not require a check or a written order from him, but used a draft, and all of these drafts were used just as a check, and the bank regarded them as checks.

Weems also testified that he gave them orders, and that it was standing authority to pay the drafts when they delivered to him the bill of lading.

This bank was selected by appellant; the method of making the shipments, sending the draft and bill of lading to this particular bank was selected by appellant, and appellee had nothing to do with it except to go to the bank, get the bill of lading, and order his account charged with it. In the sending of the draft in controversy, the appellant wrote a letter expressly stating that the draft was sent to the bank as its agent. Appellant selected the bank; it was acting for appellant under appellant's directions. It had authority to act for appellant, and we think appellant is bound by its actions. It is true that ordinarily the bank to which paper is sent for collection is the agent for the payee, but in this instance the appellant selected the bank named as its representative, and delivered the bill of lading and presented the draft and received payment, and the appellee paid it in the usual way, that is, directed the bank to charge his account with it, and we do not think it possible to find any basis on which to rest a holding that the bank was the agent for the appellee or that it acted in a dual capacity. Appellee, at most, simply acquiesced in appellant's selection of the First National Bank of Lepanto, and this acquiescence in the selection made by the appellant did not constitute the Bank of Lepanto the appellee's agent. A case involving a question very similar to the question in this case was decided by the Supreme Court of Mississippi, and among other things the court said:

"The bank to which a check is sent for collection is the agent of the holder of the check for the purpose of making the collection, and the payment of such check absolves the drawer from further liability thereon; * * * when a check is received for collection by the bank on which it is drawn, and the drawer then has sufficient funds on deposit with such bank with which to pay the check, the drawer will be discharged from further liability on the check, although the bank fails to pay the amount of the check to the holder thereof from whom it was received, notwithstanding the bank may be then insolvent, provided it was then open for business, and it does not appear that, in the event the check had been presented to it by another collection agent, it would not have been paid." *Marine Bank & Trust Co.* v. *Triplett,* 149 Miss. 274, 115 So. 202.

The court in the above case also said:

"The agreed facts in this case show that, when the Bank of Centerville received the check involved for collection, and for some days thereafter, it had on deposit to the credit of appellee, the drawer of the check, sufficient funds with which to pay the same. The Bank of Centerville, as the agent of appellant for the collection of the check, should have charged appellee's account with the amount of the check. The failure of the Bank of Centerville so to do was the cause of the check not being paid by the appellee. The Bank of Centerville was the agent of appellant for the collection of the check. The failure of the bank to perform its duty by charging the amount of the check to appellee's account is chargeable to its principal, the appellant. Therefore whatever loss there was must fall on appellant and not on the appellee."

In the instant case the First National Bank of Lepanto, as the agent of appellant for the collection of the draft, should have charged appellee's account with the amount of the draft. The failure of the Bank of Lepanto so to do was the cause of the draft not being paid by the

appellee. The Bank of Lepanto was the agent of appellant for the collection of the draft. The failure of the bank to perform its duty by charging the amount of the draft to appellee's account is chargeable to its principal, the appellant. Therefore whatever loss there was must fall on appellant, and not on the appellee.

Counsel on both sides have cited many authorities, but we do not think it necessary to review them here. The undisputed facts show that the Bank of Lepanto was the agent of appellant, and its failure or neglect to charge appellee's account with the draft must be chargeable to its principal, the appellant, and the loss caused by the negligent or careless conduct of the Bank of Lepanto must fall on the appellant, and not on the appellee. The facts in the case are practically undisputed, and it would therefore serve no purpose to set out the testimony at length. The only question involved is the question as to whether the appellant or appellee should bear the loss caused by the failure of the Bank of Lepanto to charge appellee's account and remit the amount to appellant.

We have reached the conclusion that the loss must fall on the appellant, and the judgment of the circuit court is therefore affirmed.

Mr. Justice KIRBY dissents.