(136 So. 808)

**ABILENE FLOUR MILLS CO. v. JACKSON LUMBER CO.**

**4 Div. 526.**

Supreme Court of Alabama.

May 21, 1931.

Rehearing Denied Oct. 15, 1931.

E. O. Baldwin, of Andalusia, for appellant.

W. O. Mulkey, of Geneva, and A. R. Powell, of Andalusia, for appellee.

**FOSTER, J.**

The courts and annotators have given considerable attention to the general question involved in this case. They note some important distinctions, but in the main agree that, if one draws a sight draft and sends it to a bank for collection, with no special instructions, and the drawee has a general deposit account in that bank with a balance sufficient to take care of the amount and draws a check on the same bank for the amount of the draft and delivers it to the bank, and it has on hand sufficient funds, and the draft is by the bank marked paid and delivered to the drawee, it ordinarily constitutes a payment. Marland Refining Co. v. Penn Soo Oil Co., 54 S. D. 10, 222 N. W. 594; Wells Oil Co. v. Marcus Oil & Supply Co., 206 Iowa, 1010, 221 N. W. 548, 65 A. L. R. 1145, note 1151; 18 A. L. R. 537; Andrew v. Bank, 204 Iowa, 565, 215 N. W. 742; Scott County Mill. Co. v. Weems, 179 Ark. 935, 19 S.W.(2d) 1027; Sulphur v. Farmers' Nat. Bank, 101 Okl. 148, 224 P. 518; Pollak v. Niall-Herin Co., 137 Ga. 23, 72 S. E. 415, 35 L. R. A. (N. S.) 13; Sayles v. Cox, 95 Tenn. 583, 32 S. W. 626, 32 L. R. A. 715, 49 Am. St. Rep. 940; Howard v. Walker, 92 Tenn. 452,

21 S. W. 897; Peters Shoe Co. v. Murray, 31 Tex. Cr. App. 259, 71 S. W. 977; Corporation Comm. v. Merchant's Bank, 137 N. C. 697, 50 S. E. 308; Schafer v. Olson, 24 N. D. 542, 139 N. W. 983, 43 L. R. A. (N. S.) 762, Ann. Cas. 1915C, 653; 1 Morse on Banks (6th Ed.) § 248 (a), p. 603; Scott v. Gilkey, 153 Ill. 168, 39 N. E. 265; Baldwin's Bank v. Smith, 215 N. Y. 76, 109 N. E. 138, L. R. A. 1918F, 1089, Ann. Cas. 1917A, 500.

The conclusion does not disregard the fact that, as an agent, if the bank receives in payment anything but money, such payment is conditional upon the exchange of it into money. But if the bank is open for business, and has a sufficient amount of cash on hand, and the drawee has a sufficient amount subject to check, and draws the check, delivers it, and receives the draft marked paid, it is equivalent to the passing of the money over the counter to the drawee on his check, and then passing back over the same counter the same money in payment of the draft. Had such physical facts occurred, a literal payment in money would have been the effect. The authorities we have cited also agree that this is not affected by the fact that the check is not entered on the depositor's account until the bank is taken over for liquidation. In one case this was done at the close of business the same day. Marland v. Penn Soo Co., supra; see, also, on this point, Schafer v. Olson, supra.

It is especially pointed out in some of the cases that there must be in the bank a sufficient amount of cash to handle the transaction. Bowen-Oglesby Mill. Co. v. Hall, 170 Ark. 201, 279 S. W. 374; Id., 175 Ark. 699, 300 S. W. 412; Sulphur v. Farmers' Nat. Bank, 101 Okl. 148, 224 P. 518; Baker-Evans Grain Co. v. Ricord, 126 Kan. 107, 267 P. 14. And that if the bank is insolvent, and unable for that reason to provide sufficient funds, it will not constitute a payment. Baker-Evans Grain Co. v. Ricord, supra; Cosmopolitan Trust Co. v. Lyons, 244 Mass. 115, 138 N. E. 325. And so, also, in one case it was said that, if there are special instructions to collect cash only, it is not a payment. Sanitary, etc., v. Nat. Pickle, etc., Co., 191 Iowa, 1259, 184 N. W. 354, 18 A. L. R. 532. In this respect it is differentiated in a later case in the same court. Wells Oil Co. v. Marcus etc., supra, 65 A. L. R. 1151. It is also held in one case not to be a payment, if the drawee merely indorses his acceptance on the draft without giving a check in settlement, though it was customary for the bank to charge on the deposit account the amount of the accepted draft. State Bank v. Byrne, 97 Mich. 178, 56 N. W. 355, 21 L. R. A. 753, 37 Am. St. Rep. 332.

In this case, the agreed statement of facts shows that the draft with bill of lading attached was sent by plaintiff to the First National Bank of Florala, and received by it on January 6th, and on that day it was presented to the drawee and a check was thereupon given the bank on a deposit account in that bank for its payment; that the drawee had ample funds in the bank to pay the check and the draft was then and there marked paid and surrendered to the drawee. No entry was made on the bank books showing the transaction; the bank was insolvent and went into liquidation at the close of business on January 10th, without remitting the funds to the drawer. Those facts were all unknown to the drawee. The further statement in the agreed facts that the drawee had in the bank ample funds for the payment of the check, and that it continued in business four days thereafter, carry an inference that it had on hand a sufficient amount of cash to handle the transaction, there being nothing to the contrary shown.

The principle of the authorities which we have cited is based on the assumption that a sight draft was sent to the bank for collection. The same conclusion would be inevitable if it were otherwise authorized by the creditor to collect the debt. The instrument sent the bank in this case was not a sight draft, but recited that it was to be accepted and was payable thirty days after date. It was duly indorsed by plaintiff, and by various other banks before reaching the Florala bank. The authority of the bank at Florala to collect such a draft with bill of lading attached before the date specified for its payment is dependent upon a principle considered in the case of Bliss v. Cutter, 19 Barb. (N. Y.) 9. In that case an acceptance due ten days after date was sent to a bank for collection with bill of lading. The draft was accepted and later was paid before it was due. The collecting bank failed before such due date, and no part of the money was paid by it to drawer. The effect of the transaction as a payment by the debtor hinged upon the right of the bank to collect the draft before its maturity. Accepting the general rule that one who pays money to an agent of the creditor before it is due pays it at his own risk, and thereby usually constitutes that person his own agent to hold the money until it is due to be paid, the situation in hand was not controlled by that general rule, and it was reasoned thus:

"Looking at the character of the transaction and the relations of the parties, without limiting ourselves to the task of spelling or parsing out the authority by the literal meaning of the terms of the draft on the one hand, or seeking for it in any of the special facts of this case on the other, we come to the question upon which the legal proposition involved in this case depends. What was the thing which the bank was authorized by the

plaintiffs to do? It was to collect and receive the money due on this draft, and I see nothing in the authority thus conferred upon their agent, or in the subject matter to which it relates, indicating an intention on their part to prohibit the agent from receiving the money until the day it fell due. The case differs essentially from that of a bond and mortgage or other security having a long time to run, indicating a permanent investment on the part of the creditor of his funds, and an intention to keep them thus invested and secured. But that is not the case we have to decide; and it is unnecessary to intimate any opinion upon it.

"In the case under consideration, the authority of the bank was to receive, as it was the object of, the plaintiffs to procure, payment of this draft. The defendants have paid it, with the interest to the time of the payment, which was the value at that time of the money due upon it, and but for the unforeseen event of the failure of the bank, it would hardly have occurred to any one, and last of all to the plaintiffs, that that authority was limited to the day when the draft fell due. To give legal effect to such an afterthought would, in my opinion, be doing violence to the previous intentions of all the parties, and injustice to the good faith with which the defendants have acted in this matter." Scott v. Nordin, 171 Minn. 469, 214 N. W. 472.

██ There was an indorsement on the draft in this case as follows: "To collecting bank this draft is placed for collection only and is not to be treated as a deposit. The funds obtained thru its collection are to be accounted for to us as a trust and are not to be commingled with the other funds of collecting bank."

This and the indorsement by plaintiff and the various other banks justify the inference that the Florala bank was expected to make the collection, and was not merely authorized to have the draft accepted. By the terms of the purchase, the shipment was to be "made open, that is, without bill of lading and draft attached or order notify." It does not appear that there was an agreement or a custom that under such a transaction the purchaser should be accorded thirty days in which to pay. The allowance of thirty days therefore was but a courtesy to be used at the option of the purchaser. Unless there is an agreement or trade custom to the contrary, a sale of property is for cash.

██ We think that all the circumstances show authority in the bank to make immedi-ate collection, and that such was the effect of the transaction. The ruling of the circuit court conformed to our views, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

FOSTER, J.

The first principle referred to in the opinion is supported by our case of First Nat. Bank v. Hall, 119 Ala. 64, 24 So. 526. But that opinion held that, under section 5242 of the Revised Statutes, now section 91, USCA vol. 12, the transaction constituted an unlawful preference, and was therefore ineffectual as a payment by virtue of such statute. The report of that case does not show whether the officers of the bank knew of its insolvency, but assumed that the payment was in contemplation of insolvency, and cited Nat. Security Bank v. Butler, 129 U. S. 223, 9 S. Ct. 281, 32 L. Ed. 682. But in that case, when the transaction occurred, the directors had held a meeting and voted to go into liquidation. Whereas, in the case of McDonald v. Chemical Nat. Bank, 174 U. S. 610, 19 S. Ct. 787, 43 L. Ed. 1106, payments made a few days before closing were held not to violate the statute, though the bank was insolvent, because it had continued to transact business in the regular way, and discloses no intention nor expectation on the part of its officers presently to suspend business. It is further said that, though the bank afterwards turns out to be insolvent, that does not suffice to show a violation of the statute. For there is often the hope that by continuing the ordinary business affairs they may take a favorable turn and thus suspension of business be avoided.

In this case the bank continued in business for four days, and nothing shows that it was not the fair expectation of its officers, when this transaction occurred, to continue in business for an indefinite period. So that it is not controlled by the United States statute to which the Hall Case refers.

We also observe that no contention has been made in this case that said statute is controlling. We think that the principles referred to in our opinion have been correctly applied.

Application for rehearing is denied.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.