HOWARD .& CO. *v.* WALKER.

(*Nashville.* March 23, 1893.)

1. BANKS AND BANKING. *What constitutes payment of draft.*

As between holder and drawee, a draft must be held to have been paid or satisfied upon these facts, to wit: Walker having draft on Howard & Co. indorsed and deposited it with bank A. Promptly bank A forwarded it to bank B, its regular correspondent, indorsed "for collection." Bank B presented it to Howard & Co., and, by their direction, to bank C, for payment. Bank C, having ample funds of Howard & Co., lifted said draft, but without paying any cash thereon, and canceled and delivered it up to Howard & Co., taking credit therefor upon settlement with them. In settlement, made in accordance with banking customs, between banks B and C, this draft was embraced, there being a large balance on that settlement in favor of bank B, which was not paid, but placed to that bank's credit. Bank B credited bank A with amount of this draft, though no money passed. In this situation banks B and C became insolvent—bank C being largely indebted to bank B.

2. SAME. *Customs in transaction of business.*

The Courts recognize and enforce, and the public and individuals must, at their peril, take notice of the reasonable and lawful customs adopted for the transaction of commercial business.

Cases cited and approved: Sahlien *v.* Bank, 90 Tenn., 221; Bank *v.* McClung, 7 Lea, 492; 1 Pet., 25; 11 Wheat., 431; 11 N. Y., 213; 89 N. Y., 182.

---

FROM MAURY.

---

Appeal in error from Circuit Court of Maury County. E. D. PATTERSON, J.

HUGHES & HATCHER for Howard.

GEO. C. TAYLOR for Walker.

SNODGRASS, J. The plaintiff in error was defendant below in a suit brought by Walker before a Justice of the Peace for $140, the price of a mule. He obtained judgment before the Justice, and on appeal in the Circuit Court, for the amount claimed; and Howard & Co. appealed in error.

The facts were agreed upon, and are as follows:

Howard & Co. authorized W. T. Boyd to buy mules for them in October, 1891, and to pay for such mules by drafts drawn on them. On October 5, 1891, Boyd bought a mule for them from Walker, and gave him a draft on Howard & Co. for its price, $140. Walker indorsed the draft, and deposited it in the First National Bank of Centerville, Tennessee, on same day, and this bank immediately forwarded it to its regular correspondent at Columbia, the Columbia Banking Company, indorsed "for collection." The Columbia Banking Company received the draft on the seventh, and on the eighth of October presented the draft to Mr. Howard, of the firm of Howard & Co., who directed that it be taken to the Bank of Columbia for payment. On the thirteenth of October the Columbia Banking Company presented the draft to the Bank of Columbia, where directed, and where Howard & Co. had funds more than

sufficient to pay it. The bank took the draft and charged it to account of Howard & Co., canceled it, and delivered it afterwards to them upon making up their pass-book, leaving still · a balance to the credit of Howard & Co. in the Bank of Columbia. No money was actually paid out, but in the settlement between these banks on that day (which was the usual daily settlement according to the custom of these banks), the Bank of Columbia held checks and drafts against the Columbia Banking Company to the amount of $2,000 in excess of drafts and checks held by the Columbia Banking Company against the Bank of Columbia; and it therefore charged up, according to the custom of these banks, and, as it is agreed, of all banks, this excess of $2,000 to the Columbia Banking Company, which · gave a corresponding credit to the Bank of Columbia.

The Columbia Banking Company never remitted to the Bank of Centerville, and that bank never received any thing, on the draft or otherwise, through this collection. Both the Bank of Columbia and the Columbia Banking Company failed on the seventeenth of October. They were both insolvent from the fifth to the seventeenth, but their officers did not know it until October 17, and there is no pretense of bad faith in their transactions with each other. They were according to the usual daily course of business between them.

When the settlement of the thirteenth of October referred to took place, in which the draft now in

controversy was included, the Columbia Banking Company gave credit to the First National Bank of Centerville for amount of the draft, but, as before stated, never actually remitted or otherwise paid it to that bank or plaintiff.'

When the Columbia Banking Company and the Bank of Columbia suspended business on the seventeenth, the former was indebted to the latter several thousand dollars.

Upon these facts, with some others not material to be stated, the Circuit Judge held the draft had not been paid; that the transaction in which it was settled was not a collection, and was not binding on plaintiff; and that Howard & Co. were still liable to him for the original debt.

In this we hold there was manifest error.

The collection was, according to bank custom, as effectual as though the money had been handed over the counter by, each bank to the other in satisfaction of this as of the several other checks involved. It makes no difference, and makes it none the less a payment, that the indorsement by the Centerville bank was restrictive " for collection." It was expected that such draft would be collected in the usual way, and it is agreed that it was done according to custom of these and all banks in daily transactions with each other, in which checks are not paid alternately back and forth, but settlement made upon the basis indicated. This is the general custom, and is a reasonable one, and parties dealing with the banks adopting are bound

by it. 1 Morse on Banks, Sec. 9, pp. 28, 29, and notes (3d Ed.); *Mills* v. *Bank*, 11 Wheat., 431; *Bank* v. *Triplett*, 1 Peters, 25; *Sahlien* v. *Bank*, 6 Pickle, 221.

The references on the subject in the foregoing cases cited, establish conclusively the binding effect of reasonable customs of banks in general collections, as in other dealings, and cover, in principle, the case before us; but the exact question has been decided, and it is treated as settled.

In his work on "Commercial Paper," Mr. Randolph says: "If the holder of a bill directs that it be paid to a certain banker, procuring credit with such banker will amount to a payment of the bill. So, if the amount of a note is credited to a bank holding it for collection (according to the custom of dealings between the banks), it will be a payment, although the bank making the note and giving the credit failed on the day it was so credited." Vol. III., Secs. 1395, 1456. See also *Bank* v. *Bank*, 11 N. Y., 213, 214; *Briggs* v. *Bank*, 89 N. Y., 182; *Bank* v. *McClung*, 7 Lea, 492.

The doctrine has been extended, and collecting banks have been recognized as authorized to receive their own certificates of deposit in payment, and the debtor is discharged, even though the bank fails before remitting. 1 Morse on Banks, Sec. 305.

These principles are not in contravention of that which permits an agent to receive only money in payment of his principal's debt. If the principal

select a bank as his collecting agent, he is presumed to understand the business methods by which such transactions are effected through usages of banks; actual ignorance of them is of no avail as an excuse, for, as said in the case cited by Mr. Morse on the last proposition herein stated, in respect to the transaction as a question of custom, ignorance of the plaintiff as to the existence of such usage was of no moment. Every business man must be held to know the method by which nearly all the banks in the country transact business by checks, drafts, and certificates of deposit. *Mortgage Co.* v. *Tibballo,* 63 Iowa, 468.

These business transactions are understood to be, and are in effect, the payment of money by one and its receipt by the other bank. It is impracticable, if not impossible, to go through the vain and empty formality of paying cash back and forth by each bank to every other on every separate check involved in the multiplicity of the transactions in which they are used. The banks must resort to a method of balancing accounts and settling on basis of results, and no man sending a check or draft for collection has any reason to expect that his collection will be made otherwise than all are made in this way. It is a money settlement, and the receipt of money in payment in the actual business sense that the law requires, under the reasonable custom adopted by banks as a necessity, and recognized as such throughout the world. It is the recognition and adoption of this

view which has sustained that greatest of modern conveniences, the clearing-house system, which a contrary one ,would now overthrow. Neither authority nor policy requires an abandonment of it, but, on the contrary, the Courts are impelled by both to uphold it.

The judgment is, therefore, reversed, and judgment entered here for defendant.