## SCHAFER v. OLSON.

(43 L.R.A.(N.S.) 762, 139 N. W. 983.)

**Land contract — sale — agency — deed — delivery.**

1. Plaintiff, a resident of Illinois, entered into a contract through correspondence, agreeing to sell to defendant Olson lands in this state, no place having been agreed upon for the closing of the deal. Defendant's agent, in a letter accepting plaintiff's offer, among other things said, "We inclose a warranty deed, which you can execute, and have your Elkhart bank send to the People's State Bank, of Lakota, and we will take same up." Plaintiff acted on such suggestion, and not only sent to the Lakota bank the deed, but also a sight draft for $4,200 in a letter containing specific instructions to deliver

---

Note.—Authorities involving the precise question whether a bank to which paper is sent for collection at request of the obligor is the agent of the obligor or of the holder are not numerous, as shown by a review thereof in a note to Virginia Carolina Chemical Co. v. Steen, 34 L.R.A.(N.S.) 734, but such authority as there is seems to sustain the holding in SCHAFER v. OLSON that the bank is the agent of the owner of the paper.

same on payment of such draft, and to remit by New York or Chicago exchange.

*Held,* that the bank was plaintiff's agent for the collection of such draft and the consummation of the deal by the deed.

**Banks — accounts — private checks — drafts — payments — insolvency.**

2. One B, acting on defendant's behalf, gave to the bank a check drawn on B's account therein, in payment of such draft. Such check was accepted by the bank and the deed delivered, but no remittance to the plaintiff was made. B's account at the time showed a balnace of about $8,000. Eight days thereafter the bank ceased doing business.

*Held,* there being no proof that the bank was insolvent when the check was given and accepted, that the giving and receiving of such check constituted a payment of the draft.

Opinion filed March 15, 1912. On rehearing February 13, 1913.

Appeal from the District Court for Nelson County; *C. F. Templeton,* J.

From a judgment in favor of plaintiff, defendant appeals. Reversed.

*H. A. Libby,* for appellant (*Scott Rex,* of counsel).

The People's State Bank of Lakota was the agent of Schafer, and not the agent of Olson, in closing the land transaction. Rev. Codes, Sec. 5753; Welge v. Batty, 11 Ill. App. 461; McMullen v. People's Sav. & L. Asso. 57 Minn. 33, 58 N. W. 820; Waldman v. North British & M. Ins. Co. 91 Ala. 170, 24 Am. St. Rep. 883, 8 So. 666; McCarty v. Fremont, 23 Cal. 197; Sayre v. Nichols, 7 Cal. 535, 68 Am. Dec. 280; Ingraham v. Whitmore, 75 Ill. 24; Renwick v. Bancroft, 56 Iowa, 527, 9 N. W. 367; Ruthven Bros. v. American F. Ins. Co. 92 Iowa, 316, 60 N. W. 663; Appleton Bank v. McGilvray, 4 Gray, 518, 64 Am. Dec. 92; Underwood v. Birdsell, 6 Mont. 142, 9 Pac. 922; Furnas. v. Frankman, 6 Neb. 429; Wright v. Boynton, 37 N. H. 9, 72 Am. Dec. 319; Daly v. Stetson, 22 Jones & S. 202, 10 N. Y. S. R. 453; Planters' Nat. Bank v. First Nat. Bank, 75 N. C. 534; McKinnon v. Vollmar, 75 Wis. 82, 6 L.R.A. 121, 17 Am. St. Rep. 178, 43 N. W. 800.

Even if Baird was Olson's agent, he could not delegate authority to banks to act as such agent. Lewis v. Ingersoll, 1 Keyes, 347; Stephens

v. Badcock, 3 Barn. & Ad. 354, 1 L. J. K. B. N. S. 75; 23 Am. & Eng. Enc. Law, 93—and cases cited.

Agent's acts not ratified, unless all material facts and circumstances are made known to principal. 1 Am. & Eng. Enc. Law, 2d ed. 1189; Rust v. Eaton, 24 Fed. 830; Wheeler v. Northwestern Sleigh Co. 39 Fed. 347; Wheeler v. McGuire, 86 Ala. 398, 2 L.R.A. 808, 5 So. 190; Dean v. Bassett, 57 Cal. 640; Billings v. Morrow, 7 Cal. 171, 68 Am. Dec. 235; Hurley v. Watson, 68 Mich. 531, 36 N. W. 726; Colvin v. Peck, 62 Conn. 155, 25 Atl. 355; Stanley v. Chamberlain, 39 N. J. L. 565; Nichols v. Bruns, 5 Dak. 28, 37 N. W. 752; Combs v. Scott, 12 Allen, 493; Vincent v. Rather, 31 Tex. 77, 98 Am. Dec. 516.

An agent to collect, as a general rule, and in the absence of special instructions, has no authority to receive anything in payment, but money. But, where an agent bank for collection receives and accepts its depositor's check on open account in bank, as payment, and makes delivery of deed, draft and papers for which collection and payment were so made, such transaction constitutes payment. British & A. Mortg. Co. v. Tibballs, 63 Iowa, 468, 19 N. W. 319; Welge v. Batty, 11 Ill. App. 461; Francis v. Evans, 69 Wis. 115, 33 N. W. 93; Bolles, Bkg. 557; Scott v. Gilkey, 153 Ill. 168, 39 N. E. 265; Pinkney v. Kanawha Valley Bank, 68 W. Va. 254, 32 L.R.A.(N.S.) 987, 69 S. E. 1112, Ann. Cas. 1912 B, 115; Winchester Mill Co. v. Bank of Winchester, 120 Tenn. 225, 18 L.R.A.(N.S.) 441, 111 S. W. 248; Holtan v. Beck, 20 N. D. 5, 125 N. W. 1048; Rev. Codes, § 7317, subdiv. 20; Morse, Banks & Bkg. 4th ed. § 248; Bolles, Bkg. 557; Sayles v. Cox, 95 Tenn. 579, 32 L.R.A. 715, 49 Am. St. Rep. 940, 32 S. W. 626; State ex rel. North Carolina Corp. Commission v. Merchants' & F. Bank, 137 N. C. 697, 50 S. E. 308, 2 Ann. Cas. 537; Smith Roofing & Contracting Co. v. Mitchell, 117 Ga. 772, 97 Am. St. Rep. 217, 45 S. E. 47; Harrison v. Legore, 109 Iowa, 618, 80 N. W. 670; Hare v. Bailey, 73 Minn. 409, 76 N. W. 213; Oddie v. National City Bank, 45 N. Y. 735, 6 Am. Rep. 160; Howard v. Walker, 92 Tenn. 452, 21 S. W. 897; 1 Morse, Banks & Bkg. §§ 248–305; 3 Randolph, Com. Paper, §§ 1395–1456; Commercial Bank v. Union Bank, 11 N. Y. 213, 214; Briggs v. Central Nat. Bank, 89 N. Y. 182, 42 Am. Rep. 285; Pollak Bros. v. Nall-Herin Co. 35 L.R.A.(N.S.) 13, and cases

cited in note, pp. 36 to 38; Board of Education v. Robinson, 81 Minn. 305, 83 Am. St. Rep. 374, 84 N. W. 105.

*Frick & Kelly,* for respondent.

The People's State Bank was Olson's agent. McCroskey v. Hamilton, 108 Ga. 640, 75 Am. St. Rep. 79, 34 S. E. 111; Breck v. Meeker, 68 Neb. 99, 93 N. W. 993; Rev. Codes, § 5794; McMullen v. People's Sav. & L. Asso. 57 Minn. 33, 58 N. W. 820; Fair v. Bowen, 127 Mich. 411, 86 N. W. 991; Dodge v. Tulleys, 144 U. S. 451, 36 L. ed. 501, 12 Sup. Ct. Rep. 728; Kidd v. Cromwell, 17 Ala. 648.

There was no payment in this case. The delivery to and acceptance by the collecting agent bank, of depositor's check on open account in such bank, not a payment of claim in hands of such bank for collection. Moore v. Pollock, 50 Neb. 900, 70 N. W. 541; Ormsby v. Graham, 123 Iowa, 202, 98 N. W. 724.

Agent cannot bind his principal by any arrangement short of an actual collection of the money. Cooney v. United States Wringer Co. 101 Ill. App. 468; Wilken v. Voss, 120 Iowa, 500, 94 N. W. 1123; Everts v. Lawther, 165 Ill. 487, 46 N. E. 233; Holt v. Schneider, 57 Neb. 523, 77 N. W. 1086.

Agent not authorized to accept in payment of principal's claim, an indebtedness against himself. Plano Mfg. Co. v. Doyle, 17 N. D. 386, 17 L.R.A.(N.S.) 606, 116 N. W. 529; Union School Furniture Co. v. Mason, 3 S. D. 147, 52 N. W. 671; Deatherage v. Henderson, 43 Kan. 684, 23 Pac. 1082; Parker v. Leech, 76 Neb. 135, 107 N. W. 217; Western White Bronze. Co. v. Portrey, 50 Neb. 801, 70 N. W. 383; Robinson v. Anderson, 106 Ind. 152, 6 N. E. 12; Smith v. James, 53 Ark. 135, 13 S. W. 701; St. John & M. Co. v. Cornwell, 52 Kan. 712, 35 Pac. 785; Talboys v. Boston, 46 Minn. 144, 48 N. W. 688; Lokken v. Miller, 9 N. D. 512, 84 N. W. 368.

Rule applies to bank receiving its own checks or certificates of deposit. Francis v. Evans, 69 Wis. 115, 33 N. W. 93; Bank of Montreal v. Ingerson, 105 Iowa, 349, 75 N. W. 351; State Bank v. Byrne, 97 Mich. 178, 21 L.R.A. 753, 37 Am. St. Rep. 332, 56 N. W. 355; Re Johnson, 103 Mich. 109, 61 N. W. 352; Wallace v. Stone, 107 Mich. 190, 65 N. W. 113.

24 N. D.—35.

Fisk, J.  This is one of those unfortunate controversies wherein one of two innocent persons must suffer for the default of a third person, and the crucial question for decision is, Whose agent, in the transaction between the parties, was such third person, plaintiff's or defendant's?

The facts necessary to a correct understanding of the points involved are as follows:

On, and prior to December 18, 1909, plaintiff, a resident of Springfield, Illinois, being the owner in fee of the real property described in the complaint, a quarter section of land in Nelson county, this state, entered into an agreement to sell such land to the defendant Olson, for the sum of $4,500.  Such contract was entered into through correspondence, the plaintiff having written to Olson a few days prior to December 18th, offering to sell the land to him at said price, the acceptance of which offer was communicated to plaintiff through a letter, Exhibit 1, written by one Thomas J. Baird to plaintiff, dated December 18th, as follows:

We are in receipt of your letter of the 13th inst. and herewith inclose you a check for $200, as part payment on the N. W. $\frac{1}{4}$, 32–152–60.  We also inclose you a warranty deed, which you can execute and have your Elkhart bank send to the People's State Bank of Lakota and we will take same up.  If married you can fill in your wife's name.

We sold this land to Mr. Olson for $4,500, you to pay us a commission of $100, and Mr. Olson is to deliver your grain in the elevator free, which he will do as soon as possible.  There will be $4,200 balance due you on this proposition less abstracting.  Send us abstracts of title at once.  We inclose you a receipt, which please sign and return to us.

Very respectfully,

Thomas J. Baird.

On receipt of the Baird letter, plaintiff delivered such letter to his local bank at Elkhart, Illinois, and also a duly executed warranty deed of this land running to Olson, and instructed such bank to forward such deed to the people's State Bank of Lakota, as suggested in Baird's letter.

On January 6, 1910, the Elkhart bank, through plaintiff's son as

cashier, wrote the Thomas J. Baird Investment Company at Lakota as follows:

Gentlemen:—

I am this day forwarding by registered letter to the people's State Bank of your city warranty deed and abstract to the N. W. ¼, 32–152–60, along with sight draft for $4,200 with exchange, advising them to deduct amount of abstracter's charge for recording the release of mortgage, which is the only item which does not appear on abstract, and otherwise there is nothing against the place whatever.

Inclosed herewith you will also find receipt for $200 for first payment on this land. This deed has been in my possession for several days, with instructions from my father to send it on, but I have been very busy and it has been neglected, which I regret.

Very truly yours,<br>W. F. Schafer,<br>Cashier.

And on said January 6th such Elkhart bank also wrote the People's State Bank of Lakota as follows:

Gentlemen:—

I am handing you herewith at the request of the Thos. J. Baird Inv. Co., warranty deed to the N. W. ¼ 32–152–60, along with the abstract of title thereto and sight draft for $4,200, with exchange.

There is a release of mortgage on record that is not shown on this abstract, the recording of which on this abstract may be deducted from the principal amount, but that is all, as there is nothing ·else against the place and hasn't been.

Upon the payment of the above amount, less the abstracting charge of that item, kindly turn the deed and abstract over to parties, and make remittance in New York or Chicago Exchange to me.

Very truly yours,<br>W. F. Schafer,<br>Cashier.

Thereafter defendant Olson, acting through Baird, procured a loan.

from defendant Lord for the sum of $4,000, giving a mortgage as security on this and another quarter of land, and the proceeds of such loan were deposited by the Baird Investment Company in the People's State Bank, and on January 18, 1910, such investment company gave its check payable to the order of the People's State Bank for the sum of $4;199.20, representing the balance of the purchase price due plaintiff on such deal after deducting certain minor items of expense and the $100 commission which plaintiff was to pay Baird, and thereupon the People's State Bank received such check and delivered the warranty deed aforesaid, and the same was thereafter duly recorded. At the time such check was given, the Thos. J. Baird Investment Company had on deposit in the People's State Bank the sum of about $8,000. The testimony discloses that such check was not charged on the books of the bank against the account of the Baird Investment Company, and that the bank never remitted to plaintiff or to the Elkhart bank for plaintiff, by New York or Chicago Exchange or otherwise, the amount of the balance due plaintiff on such sale. Thereafter, and on the evening of January 26th, the bank closed its doors, and ever since has been in the hands of the state bank examiner, or a receiver appointed by the court in an action pending to wind up its affairs as an insolvent institution.

Plaintiff, by this action, seeks to recover such balance from Olson, and he is concededly entitled to recover unless the People's State Bank was his agent, and also unless the giving to and acceptance by such bank of the Baird check constituted in law a valid payment to him. Plaintiff had judgment in the lower court, and defendant Olson appeals.

There are but two points involved. First, Was the People's State Bank the agent of the plaintiff to receive the balance due him of such purchase price and to make delivery of the deed, or was such bank defendant Olson's agent? And, second, if it was plaintiff's agent, was the payment by check as aforesaid a sufficient payment to bind the plaintiff?

Conceding, for the sake of argument, all that respondent's counsel claim with respect to the authority of Baird to write the letter, Exhibit 1, as the agent of Olson, and consequently that the latter is bound by everything contained therein, still we find ourselves unable to agree with the conclusion of the trial court to the effect that the People's

State Bank was Olson's, and not Schafer's agent in consummating the deal. If the bank was Olson's agent to collect the purchase price and to deliver the deed, then Olson's agent Baird dealt with Olson's agent the bank, in closing the deal. In other words, it was a one-sided transaction of Olson dealing with Olson, Schafer not being represented at all. Surely it cannot be contended that this important business transaction was consummated, or was to be consummated, except by the payment of the purchase price and the delivery of the deed; and how either could be accomplished in the absence of plaintiff in person or through an authorized agent we are unable to understand.

The letter Exhibit 1 contains this language: *"We also inclose you a warranty deed which you can execute and have your Elkhart bank send to the People's State Bank of Lakota, and we will take same up."* It is respondent's contention that this language amounts to a positive direction from Olson to Schafer to send the deed to such bank. We do not thus construe it. Olson, through his agent Baird, had no right to dictate where or how the deal should be closed, and of course Schafer knew this. Moreover, we think it manifestly clear that neither party thus construed such letter, but on the contrary it was intended merely as a suggestion of a convenient method of closing the deal. Schafer was at liberty to either act or refuse to act according to the suggestion, but having adopted and acted on the suggestion by sending the deed to such bank together with a sight draft for the balance of the purchase price, and giving full and explicit instructions to such bank regarding what should be done, we must hold that he thereby made the bank his agent for such purposes. Instead of the bank being thereby "created by Olson an instrumentality for closing the deal," it was created an instrumentality for such purpose by Schafer. Everything which the bank did or was authorized to do was for Schafer, to wit, the collection of the purchase price and the transmission thereof in the form of New York or Chicago Exchange to plaintiff, and also the delivery of the deed to Olson. We fail to see how such delivery of the deed could be made except by Schafer personally, or through his duly authorized agent.

In support of their contention that the bank was Olson's agent, respondent's counsel cite McMullen v. People's Sav. & L. Asso. 57 Minn. 33, 58 N. W. 820; Fair v. Bowen, 127 Mich. 411, 86 N. W. 991;

Dodge v. Tulleys, 144 U. S. 451, 36 L. ed. 501, 12 Sup. Ct. Rep. 728; Kidd v. Cromwell, 17 Ala. 648. The Minnesota case appears, on cursory reading, to squarely support such contention, but on careful examination we do not thus construe it. The statements of Mr. Justice Mitchell tend, we think, to differentiate that case from the case at bar. We quote: "While it is true that the money was payable at defendant's office on presentation and surrender of the necessary vouchers, and that defendant was not bound to do anything until a demand was made at that place, yet it was competent for the defendant to waive this, and to propose a different method and place of payment; and while defendant, in doing what it did, might have been actuated by considerations of convenience to the plaintiff, yet we think the fair import of its letter to plaintiff was that, if she would send the papers to the bank, defendant would pay the money to her. It is probably fairly inferable that it contemplated making this payment through the medium of the bank (and this is as the plaintiff evidently understood it); but in doing so the bank would be the agent of the defendant. There is nothing in plaintiff's letter to the bank inconsistent with this idea, or indicating any intention on her part to appoint it her agent for the purpose of collecting or transmitting her money. All there is to it is that plaintiff, assuming that the defendant proposed to use the bank as its medium for the payment of the money, requested it to transmit it at its earliest convenience." The letter of plaintiff to the bank differs quite materially from that written by the plaintiff to the bank in the Minnesota case, as a comparison will disclose. In the case at bar, as we have before stated, a deed was transmitted to the bank, together with a sight draft for $4,200, with specific instructions to deliver such deed only on payment of such draft, and when paid to remit in a certain manner, clearly proving that plaintiff intended to retain control of such deed, and not to deliver it until the sight draft was paid. The facts in the Michigan case clearly differentiate it from the case at bar, as do the facts in the two other cases cited by respondent's counsel.

Plaintiff intrusted to the People's State Bank the completion of the deal, and such bank was clearly Schafer's agent to receive the purchase price and to deliver the deed, and not Olson's agent to pay such draft.

Welge v. Batty, 11 Ill. App. 461; British & A. Mortg. Co. v. Tibballs, 63 Iowa, 468, 19 N. W. 319.

This brings us to the only other point in the case, which is, whether the delivery of the Baird check to the bank on January 18th constituted payment. We think it did. There is no proof that on said date the bank was insolvent, but even if there was, it is not contended that Baird had even the slightest intimation thereof, and at the time such check was tendered to and received by the bank it was, in so far as everyone had reason to believe, except the bank officials, a perfectly solvent institution, and for eight days thereafter it transacted its ordinary banking business. True, such check was not actually charged to Baird's account on the books of the bank until after the bank examiner took possession, such officer making such charge on the books. But we do not deem this controlling, for it is fair to assume from the record that if Baird had at that time requested the cash on the check it would have been counted out to him, and he could then have passed it back to the cashier in payment of the plaintiff's draft. This was a needless formality. Neither the law nor business usage exacted any such act on his part. It will be presumed, in the absence of proof to the contrary, that the bank, being at that time a going institution, receiving deposits and paying out moneys in the usual way, had funds on hand with which to pay the checks of its depositors in the usual manner. The fact that on January 26th the bank closed its doors and ceased doing business is no proof of its insolvency eight days prior thereto. We think that the act of the bank, in honoring Baird's check by receiving and retaining the same and by delivering the deed, operated in law as a payment of the draft. Such check, when thus accepted, was to all intents and purpose the equivalent of cash, and the mere matter of bookkeeping on the part of the bank officials, in entering or neglecting to enter such transaction on the books of the bank, is not the test as to whether payment was made. On the latter point we invite attention to the case of Nineteenth Ward Bank v. First Nat. Bank, 184 Mass. 49, 67 N. E. 670, where, among other things, the court, in disposing of a similar question, said: "It is true that the proper records were to be made upon the books, but the payment is effected by the acts, and not by the record, and was valid, even without records. Consequently the question of the subsequent records is not material. So far as re-

spected the plaintiff, the defendant had received the money for the note, and was bound to remit it to the plaintiff."

As lending support to our views that the transaction of giving the check by Baird, and its acceptance and retention by the bank, together with its delivery of the deed, constituted payment of the draft, we cite the following authorities, some of which are directly in point and others merely by inference: Welge v. Batty, and British & A. Mortg. Co. v. Tibballs, supra; Scott v. Gilkey, 153 Ill. 168, 39 N. E. 265; Francis v. Evans, 69 Wis. 115, 33 N. W. 93; Howard v. Walker, 92 Tenn. 452, 21 S. W. 897; Pinkney v. Kanawha Valley Bank, 68 W. Va. 254, 32 L.R.A.(N.S.) 987, 69 S. E. 1012, Ann. Cas. 1912 B, 115; Winchester Mill Co. v. Bank of Winchester, 120 Tenn. 225, 18 L.R.A.(N.S.) 441, 111 S. W. 248; Harrison v. Legore, 109 Iowa, 618, 80 N. W. 670; Hare v. Bailey, 73 Minn. 409, 76 N. W. 213; Arnot v. Bingham, 55 Hun, 553, 9 N. Y. Supp. 68; Daniel v. St. Louis Nat. Bank, 67 Ark. 223, 54 S. W. 214; Briggs v. Central Nat. Bank, 61 How. Pr. 250; Nineteenth Ward Bank v. First Nat. Bank, 184 Mass. 49, 67 N. E. 670; See also note to Griffin v. Erskine, 9 Ann. Cas. 1193; Morse, Banks & Bkg. § 305; 2 Bolles, Bkg. p. 557.

We have not overlooked the case of State Bank v. Byrne, 97 Mich. 178, 21 L.R.A. 753, 37 Am. St. Rep. 332, 56 N. W. 355, nor the other cases cited by respondent's counsel. In the Byrne Case the collecting bank received a demand draft for collection. The drawee of the draft was a depositor in the collecting bank, and when the draft was presented to him for payment he indorsed his acceptance thereon, and in accordance with a prior custom the bank charged such draft to the drawee's account. The bank failed to remit, and closed its doors within a few days thereafter, and it was held that such transaction did not constitute a payment of the draft. Such draft had not been delivered to the debtor, but was in the bank when it failed, and the same was thereafter returned to the creditor. It will thus be seen that the case is not directly in point with the case at bar. In the opinion the court takes occasion to criticize the cases of Welge v. Batty, and British & A. Mortg. Co. v. Tibballs, supra, and states that the great weight of authority is against these holdings. We feel obliged to differ with the Michigan court. The weight of authority, as well as reason, seems to be to the contrary, especially under facts like those in the case at bar.

The Michigan court, among other things, says: "The fact that a debtor has a credit at a bank is not conclusive evidence that the bank has money with which to honor his checks. As in this case, the bank may be insolvent when it receives the check, and there is no good reason apparent for permitting the depositor of an insolvent bank to pay his debt with worthless paper, thereby making his creditor a loser." With all this we most heartily concur; but, as before stated, the record is silent in the case at bar upon the question of the bank's insolvency; and this being true, it will certainly not be presumed that eight days before closing its doors the bank was insolvent or unable to pay its checks on presentment. We think the fact as stated in the Michigan opinion, that the collecting bank was insolvent when it received the check, or charged the draft as the equivalent of a check to the debtor's account, sufficiently differentiates that case from the case at bar.

The other cases which respondent cites are not in point.

The judgment appealed from is reversed, and the District Court is directed to dismiss the action.

## On Rehearing.

FISK, J. A rehearing having been allowed herein, the questions involved have been fully and elaborately reargued by counsel. No new light, however, has been furnished us on such reargument, and after mature deliberation we are unable to discover any sound reason why we should change our former views upon either of the points involved; nor do we deem it necessary to add anything to what is said in the former opinion, further than to remark that we are not here confronted with a state of facts such as confronted the Michigan Court in State Bank v. Byrne, 97 Mich. 178, 21 L.R.A. 753, 37 Am. St. Rep. 332, 56 N. W. 355. There the evidence disclosed the insolvency of the bank at the time it received the check. The language in the opinion clearly shows such to be the fact. In the case at bar, however, no such proof was made, and in the absence thereof the presumption is that it was solvent and therefore had funds to pay all checks presented in the usual course of business; it appearing that it was a going concern, engaged in transacting its ordinary banking business by receiving and paying out deposits in the usual course. In the light of these facts, it would be a

most extraordinary and unusual rule which would require defendant's agent Baird, on presentation of his check, to require the bank to count out to him the cash on such check and then pass the same back to the bank in payment of the draft.

In addition to the authorities cited in the former opinion, see Sayles v. Cox, 95 Tenn. 579, 32 L.R.A. 715, 49 Am. St. Rep. 940, 32 S. W. 626; State ex rel. North Carolina Corp. Commission v. Merchants' & F. Bank, 137 N. C. 697, 50 S. E. 308, 2 Ann. Cas. 537; Smith Roofing & Contracting Co. v. Mitchell, 117 Ga. 772, 97 Am. St. Rep. 217, 45 S. E. 47; Harrison v. Legore, 109 Iowa, 618, 80 N. W. 670; Hare v. Bailey, 73 Minn. 409, 76 N. W. 213; Oddie v. National City Bank, 45 N. Y. 735, 6 Am. Rep. 160; Howard v. Walker, 92 Tenn. 452, 21 S. W. 897; 1 Morse, Banks & Bkg. §§ 248, 305; 3 Randolph, Com. Paper, §§ 1395, 1456; 2 Bolles, Bkg. p. 557.

In Sayles v. Cox, supra, the syllabus is as follows: "Collection by bank in a check upon itself is equivalent to collection in cash, even if the bank failed on the same day."

In State ex rel. North Carolina Corp. Commission v. Merchants' & F. Bank, supra, the facts were that, just prior to the suspension of the Merchants' & Farmers' Bank a milling company forwarded to it for collection a draft in the sum of $693, attaching a bill of lading thereto covering a shipment of a carload of flour to the Purdie-Hooks Company, drawee of such draft. On February 8, 1904, the bank delivered the draft and bill of lading to the drawee, accepting therefor a check of such drawee against a deposit in the bank. On the following day, such bank voluntarily closed its doors because of insolvency, and the bank did not account for the proceeds of said collection; and among other things, the court said: "The transaction between the Purdie-Hooks Company and the bank amounted to a payment of the draft. . . . While the bank was open and doing business, . . . the transaction was a payment, and the same results would follow whether the bank was solvent or insolvent."

In Smith Roofing & Contracting Co. v. Mitchell, supra, the syllabus is as follows: "Where one gave to another, in payment of a debt, a check upon a bank at which he had on deposit sufficient money to meet the payment of the check, and the payee deposited the check for collection in another bank, which immediately forwarded it to the drawee

bank for payment, an entry on its books by the drawee bank, charging the amount of its depositor with the amount of the check, was equivalent to the payment thereof. The drawee bank then held the amount of the check as the agent of the payee, and the drawer was discharged from liability on the debt for which the check was given."

In the opinion of said case it was said: "The entry on the books of the Barnesville Savings Bank, charging the account of its depositor with the amount of the check, was the same as if it had paid the money over its counter to itself as agent for the bank which had sent the check for collection; and the fact that it fraudulently withheld the money from that bank and failed to enter the proper credit to its account does not render any less complete the payment by the depositor."

In Harrison v. Legore, supra, the syllabus reads: "Where an agent of a mortgagee accepts a certificate of deposit in payment of a mortgage, and deposits it in the bank which issues it, to the credit of his own account therein, the transaction is equivalent to a payment in cash."

In Hare v. Bailey, supra, one of the questions involved was whether a certain transaction between plaintiff and A. F. and L. E. Kelley, former loan agents at Minneapolis, constituted payment of a note and mortgage owing by the plaintiff to the defendant Bailey. Just prior to the maturity of such note and mortgage, plaintiff procured a loan through the Kelleys from one Dean, in which to make such payment. The Kelleys had Dean's money on deposit in their name in a bank, and they agreed to replace the Bailey loan out of the Dean money thus on deposit in their name, and accordingly took from plaintiff new loan papers payable to Dean. On the execution of the note and mortgage to Dean, the Kelleys charged him on their books with $1,100, and credited this sum to defendant Bailey, but they never remitted such money to defendant. It was contended that the transaction by which the Kelleys merely made a transfer of a credit on their books from Dean to defendant, that they did not receive any money as defendant's agents, and plaintiff did not pay them any as such agents; that no money actually passed, and that this matter of mere bookkeeping cannot be held to be a payment of defendant's note and mortgage; and the court, among other things, said: "The case is the same as if the Kelleys had drawn $1,100 out of the deposit to their credit in the bank,

and had said to plaintiff, 'This is the money which Dean has lent to you and with which he will pay Miss Bailey,' and had then redeposited it in the bank just as it had been deposited before it was drawn out; but this idle ceremony of drawing the money out of their account and redepositing it in the same account could add nothing to the binding character of the transaction. In our opinion the transaction amounted to a payment of the money to defendant."

In Howard v. Walker, supra, we quote from the opinion as follows:

"In his work on 'Commercial Paper,' Mr. Randolph says: 'If the holder of a bill directs that it be paid to a certain banker, procuring credit with such banker will amount to a payment of the bill. So, if the amount of a note is credited to a bank holding it for collection (according to the custom of dealings between the banks), it will be a payment, although the bank making the note and giving the credit failed on the day it was so credited,' vol. 3, §§ 1395, 1456. See also Commercial Bank v. Union Bank, 11 N. Y. 213, 214; Briggs v. Central Nat. Bank, 89 N. Y. 182, 42 Am. Rep. 285; First Nat. Bank v. McClung, 7 Lea, 492, 40 Am. Rep. 66.

"The doctrine has been extended, and collecting banks have been recognized as authorized to receive their own certificates of deposit in payment, and the debtor is discharged, even though the bank fails before remitting. 1 Morse, Banks & Bkg. § 305.

"These principles are not in contravention of that which permits an agent to receive only money in payment of his principal's debt. If the principal select a bank as his collecting agent, he is presumed to understand the business methods by which such transactions are affected through usages of banks. Actual ignorance of them is of no avail as an excuse; for, as said in the case cited by Mr. Morse on the last proposition herein stated, in respect to the transaction as a question of custom, ignorance of the plaintiff as to the existence of such usage was of no moment. Every business man must be held to know the method by which nearly all the banks in the country transact business by checks, drafts, and certificates of deposit. British & A. Mortg. Co. v. Tibballs, 63 Iowa, 468, 19 N. W. 319."

Morse on Banks & Banking, 4th ed. § 248, announces the rule as follows: "Collection by a bank of a debt sent to it for collection in a

check upon itself, is equivalent to collection in money, even if the bank failed the same day."

And in § 305 the rule is thus stated: "By custom, banks receive their own certificates of deposit as payment, and such custom will be judicially noticed by the courts, and will justify a collecting bank in receiving its own certificate of deposit in payment of paper it holds for collection; and the debtor is discharged, even though the bank fails before remitting. And especially will this be so where the owner of the paper directed the bank to remit by draft, for he is presumed to have intended a draft of the collecting bank.

"From the language of the court in this case it would seem that, custom or not, the payment ought to be good. 'The plaintiff in effect claimed that the debtor should have presented his certificates of deposit at the bank counter, and had the money counted out to him, and then counted it back to the cashier. The law does not require any such vain and unnecessary formality.'

"This is sound, of course, if the certificate would really have been paid by the bank, and the fact that the bank received it as payment is proof that it would have paid cash if demanded. In respect to the transaction as a question of custom, the court said that the ignorance of the plaintiff as to the existence of such usage was of no moment; every business man must be held to know the method by which nearly all banks in the country transact business by checks, drafts, and certificates of deposit.

"A sold land to B, and forwarded the deed to the C bank, to be delivered to B on payment to the C bank of $2,000, which was to be remitted to A at once. The bank took its own certificates of deposit from B, and failed the same night before remitting to A. *Held,* it was a fraud on A to take the certificates, instead of cash, and that the funds in the hands of the assignee were impressed with a trust in favor of A to the extent of $2,000, which should be paid in preference to other claims."

In 2 Bolles Modern Law of Banking, at page 557, we quote the following: "(Collecting) banks often do receive in payment checks drawn on themselves, and their own certificates of deposits, and in so doing have abundant judicial sanction, but they cannot receive a note or other claim against themselves, however valid it may be, in payment."

See also 8 Current Law, p. 1331, where it is said: "When honored by the drawee, a check or draft is equivalent to a cash payment relating to the time of delivery thereof, and this is true when delivery is to an agent, in the absence of an express limitation on the agent's authority to receive anything else than cash."

That our position may not be misunderstood, we repeat that, under the proof as disclosed in the record, the giving and acceptance of the check was the equivalent of a cash payment. The bank on which it was drawn accepted and retained it, and delivered the deed to defendant's agent Baird. The check as a medium for the payment of plaintiff's draft was thus treated the same as cash by plaintiff's collecting agent, the bank, in accordance with the universal business custom. This, under the authorities, constituted a cash payment of the draft, if, at the time, there were sufficient funds on hand belonging to the drawer of the check to meet such check. That there were such funds on hand in the bank will be presumed under the facts, in the absence of any showing to the contrary. The fact that the bank did not remit to plaintiff by Chicago or New York Exchange as per instructions from him, and that eight days thereafter it closed its doors, does not overcome such presumption. In the final analysis the whole question is whether any presumption arises as above stated that the check was the equivalent of cash. In order to show that it was, it is necessary that defendant go farther than to prove that the drawer of the check had on deposit in the bank a sufficient amount to cover the check, and that said bank received such check in the ordinary course of banking business as payment for the draft which is held for collection? We think not. We do not concede as a fact that the check and draft were not paid, but we assert that the exact contrary is true under the status of the proof as presented by the record. See also Pollak Bros. v. Niall-Herin Co. 35 L.R.A.(N.S.) 13, and cases cited in note at pages 36 to 38, and Board of Education v. Robinson, 81 Minn. 305, 83 Am. St. Rep. 374, 84 N. W. 105.

Our conclusion, as announced in the former opinion, is adhered to.

BRUCE, J. (dissenting). On a maturer consideration, I am satisfied that this court erred in its former opinion, and that the judgment in this case should be affirmed. I am quite satisfied that the People's

State Bank, of Lakota, was the agent of the respondent, Schafer, for the delivery of the deed and the receiving and transmission of the money. I am led to this belief principally by the fact that before the transaction could be culminated there must have been a delivery of the deed. Before the delivery was authorized in any way, however, payment was required to be made, and there was no one authorized to make the delivery except the People's Bank. It cannot possibly, indeed, be contended that the sending by Schafer of the deed to the bank amounted in itself to a delivery to the defendant Olson. I am equally well satisfied, however, that the People's Bank had no authority, either express or implied, to collect the payment in anything else but money; and that its principal, Schafer, was not bound even as against the defendant Olson, by the acceptance of the check in this case. It is elementary that an agent who is authorized merely to collect a demand or to receive payment of a debt cannot bind his principal by any arrangement short of an actual collection and receipt of the money; nor has he any authority to accept in payment of his principal's claim an indebtedness against himself. 22 Am. & Eng. Enc. Law, 552; 5 Cyc. 505; National Bank v. Johnson, 6 N. D. 180, 186, 69 N. W. 49; State Bank v. Byrne, 97 Mich. 178, 21 L.R.A. 753, 37 Am. St. Rep. 332, 56 N. W. 355; Ward v. Smith, 7 Wall. 451, 19 L. ed. 209; Pitkin v. Harris, 69 Mich. 133, 37 N. W. 61; Hurley v. Watson, 68 Mich. 531, 36 N. W. 726; Plano Mfg. Co. v. Doyle, 17 N. D. 386, 17 L.R.A.(N.S.) 606, 116 N. W. 529; Union School Furniture Co. v. Mason, 3 S. D. 147, 52 N. W. 67; McCarver v. Nealey, 1 G. Greene, 360. I can see no difference between a case where the collecting agent is a bank and a case where the collecting agent is an individual. In such a transaction the bank is not, strictly speaking, acting as a bank, but as a real estate or collecting agent. The payer or vendee must be presumed to have had this elementary knowledge of the law, as well as the collecting agent or bank itself; and if he chose to make his payment not in cash, but by a substitution of credits which I believe the presentation and acceptance of the check merely amounted to, he did so at his own risk. The case of State Bank v. Byrne, 97 Mich. 178, 21 L.R.A. 753, 37 Am. St. Rep. 332, 56 N. W. 355, is entirely in point, and to me expresses the correct view of the law. In that case the plaintiff sent, for collection, a demand draft on defendant, to a bank

with which it had an account.   When drafts on defendant were sent to such bank for collection, he was accustomed to write his acceptance thereon and pass them back to the bank, where they were treated by defendant and the bank as checks.   Defendant, according to such custom, wrote his acceptance on the draft in suit, passed it back to the bank, and charged himself with it in his pass book, but the bank failed and never paid plaintiff.   It was held that the transaction between the defendant and the bank did not constitute a payment, in so far as the plaintiff was concerned.   The court, in passing upon the question, said: "The most that can be claimed for this transaction is that the defendant, by accepting and delivering the demand draft, directed the Milford Bank to pay the same and charge the amount to his account, and that the bank promised to do so.   As between them, it was perhaps understood that defendant had paid this draft, but it was in law no more than an attempted substitution of the bank for himself as debtor. Had the acceptance been a check, and the check drawn upon another bank or private person, the effect would have been in law the same. The law requires payment in money; and, as already shown, nothing else answers the purpose, except by agreement with the creditor, or his agent, duly authorized, to accept something else.   As between defendant and his bank, it was clearly the latter's duty to honor his check (or acceptance, which under their custom was practically a check) by payment of the draft; but the creditor was no party to that transaction. The bank was plaintiff's agent to collect the money, not to make an arrangement by which it should assume the debt.   A debtor who seeks to pay a debt through his debtor, thereby securing his own claim, acts at his peril, and is not exonerated from his obligation until his debtor performs his part by satisfying the creditor.   There are a few authorities which, at first blush, might be supposed to justify a different conclusion.   Morse on Banks & Banking, § 247 is authority for the following: 'By custom, banks receive their own certificates of deposit as payment, and such custom will be judicially noticed by the courts, and will justify a collecting bank in receiving its own certificate of deposit in payment of paper that it holds for collection; and the debtor is discharged, even though the bank fails before remitting.   And especially will this be so where the owner of the paper directed the bank to remit by draft, for he is presumed to have intended a draft on the collecting

bank.' The case of British & A. Mortg. Co. v. Tibballs, 63 Iowa, 468, 19 N. W. 319, is the authority cited for this. It bases the decision upon the usage of banks, which it says courts will take judicial notice of. This was a certificate of deposit. If there is any usage by which certificates of deposit are so used, it is plain that such certificates are but the promise of the bank to pay; and, were it the certificate of deposit or certified check of another bank, it would be the mere substitution of one obligation for another, and it is difficult to see any difference between such a case and one where the certificate of deposit or certified check is that of the collecting bank. This holding is not supported by citations. Mr. Justice Reed dissents in an able opinion, adhering to the common-law rule. Another case, that of Welge v. Batty, 11 Ill. App. 461, is relied upon. Here the debtor drew a check on the collecting bank, having at the time a deposit sufficiently large to cover it. The check was received and draft delivered, and the amount was charged against the debtor on his bank account. A draft was sent by the collecting bank, but, before it got around, the bank failed. This was held to be a payment, the court saying that it would have been an idle ceremony for the debtor to draw his money out of the bank and pay it back again to the bank. Here, again, the court cites no authority to support its decision. The great weight of authority is against these cases. The payment by check, certificate, or what not is not for the convenience of the creditor, and he has no concern with the fact that it is the custom of the bank to take checks in payment. The fact that a debtor has a credit at a bank is not conclusive evidence that the bank has money with which to honor his checks. As in this case, the bank may be insolvent when it receives the checks, and there is no good reason apparent for permitting the depositor of an insolvent bank to pay his debt with worthless paper, thereby making his creditor a loser. No custom should be allowed to justify such a transaction, unless it be in a case where the creditor is connected with and a party to the custom. Many cases can be found where checks are received and operate as payment, but they are usually in suits between the creditor and the collecting bank, where a different question is involved. Upon the undisputed facts of this case the plaintiff was entitled to the verdict which the court properly directed."

The opinion in the above case expresses what to me appears to be

24 N. D.—36.

the sounder public policy and the real state of the law. Nor do I believe that the mere fact that the letter of instructions to the People's Bank contained the words, "make remittance in New York or Chicago Exchange to me," makes any difference in the rule. It may possibly be, as suggested by Mr. Morse in § 247 of his work on Banking, that the creditor may be presumed to have intended a draft of the collecting bank. A draft of the collecting bank, however, necessarily presupposes an account of that bank with a correspondent, or money with which to make such draft good. Even though the People's Bank had been totally insolvent at the time of the transaction in question, it, if it had been paid the money in cash, could have purchased such a draft either through another bank which had such a deposit, or have such deposited the money collected in the correspondent bank so as to make its own draft good. I am, in short, of the opinion that in this case the People's Bank was not acting strictly as a bank, but as a collecting agent.

Another reason why I am of the opinion that the judgment of the district court should be affirmed is that the plea of the defendant in this case is a plea of payment, and the burden of proof is upon the defendant to substantiate that plea. Lokken v. Miller, 9 N. D. 512, 84 N. W. 368. The plea can only be good in any consideration of the authorities, provided that he had a deposit in the bank sufficient to cover the check, and that there were in the bank funds sufficient to cover that deposit so that the acceptance of the check might operate as an equitable assignment. 5 Cyc. 505, note 74. The cases, indeed, which hold that the acceptance of a check is sufficient generally do so on the theory that it would be but an idle ceremony to require payment of the money represented by the check over the counter, and a repayment of the identical money to the bank. This, however, presupposes the existence of his money in the bank, and it would seem to me that the burden is upon the defendant to prove such fact. He has seen fit to violate the common rule of cash payment. If there is an exception to the rule he must put himself clearly within it. This he has failed to do.

The state of the law, as I understand it, is merely this,—a collecting agent has no implied authority to receive anything in payment but cash. Some courts make an exception in the case of banks, but this does not seem to be the case where there is no proof of the solvency

of the bank, or that the money could actually have been forthcoming with which to meet the check if a payment over the counter had been demanded. In other words, the defendant in such cases must show that the payment of the money over the counter would have been a mere idle ceremony, and this he cannot do without showing the existence of the money in the bank at the time of the presentation of the check. In the leading case of British & A. Mortg. Co. v. Tibballs, 63 Iowa, 468, 470, 19 N. W. 319, 320, which is cited by Mr. Justice Fisk in his opinion on the first hearing and is generally cited as authority for the proposition that a bank may receive its own checks in lieu of cash, the evidence is clear and positive that at the time of the transaction not only was the bank paying in cash all certificates of deposit presented to it, but "the bank had on that day over $8,000 cash on hand with which to transact its current business," and that at the time and after the transaction Massey saw displayed upon its cash table from four to eight hundred dollars. The evidence also showed that a few moments prior to the transaction, a deposit of four hundred dollars in cash had been made. Massey's certificate only called for $540. It was therefore perfectly clear that the payment of the amount over the counter and a repayment of it would only have been an idle ceremony. This fact the debtor in that case proved, and nothing was left to surmise or to conjecture. Even in that case, however, there was a strong dissenting opinion.

The only evidence in the case at bar upon the subject of the solvency of the bank, or that it had any funds with which to meet the check if a payment over the counter had been demanded, is to the effect that Baird & Company had a credit or deposit in said bank of over $8,000, and "that the bank ceased to do business and was closed by the examiner some eight days after" the transaction. There is no evidence whatever as to what amount in cash it had in its vaults at the time of the transaction, or as to whether it had any at all. Nor is there any evidence as to whether, during those eight days, it paid out any money at all. The sight draft called for $4,197.20. The bank might well, by receiving driblets as deposits and paying out driblets, have kept its doors open during such eight days, without at any time having on hand enough money with which to meet the check in question. We realize fully that insolvency at a certain date does not, in itself, raise

the presumption of insolvency at a prior date. We do not, however, believe that the mere fact that the doors of a bank are open, and that it is transacting business, raises any presumption that it has on hand the sum of $4,000 with which to meet a check, or, at any rate, that the presumption is that a demand for the payment of the money over the counter would be a mere idle ceremony. The general rule, in short, is that payment must be made in cash. The defendant seeks to come within an alleged exception to the rule, and he has failed in his proof.

I am not aware of ¶ 9, of § 7317, of the Revised Codes of North Dakota, which provides that "all other presumptions are satisfactory if uncontradicted. They are denominational, disputable presumptions, and may be contradicted by other evidence. The following are of that kind: (9) That an obligation delivered up to the debtor has been paid." There is in the case, however, no proof that the draft was ever delivered to Baird, though there is proof that the deed was delivered. Even if the delivery of the deed alone was sufficient to bring the case within the section of the statute mentioned, still the ultimate burden of proof has not been shifted. The burden was upon the defendant in the first place to prove payment. He raises a disputable presumption of payment by obtaining possession of the deed. This presumption, however, is met by proof that the payment was made, not in cash, but by a check,—a payment which was conditional merely, and would only be operative, provided that there was money in the bank to meet the check, so that the payment of the same over the counter would merely have been an idle ceremony, or that the agreement of the parties was that a check might be received. In other words, plaintiff has rebutted the presumption of payment by showing a conditional payment, and the burden is now shifted upon the defendant to prove that these conditions have been complied with.

I am now of the opinion that the judgment of the District Court should be affirmed.

SPALDING, Ch. J. (dissenting). Although not certain that the bank was not the agent of the defendant, on the assumption that it was plaintiff's agent, I am impelled to concur in the dissent of Mr. Justice Bruce. The question of payment seems quite simple, and rests upon a few elementary principles. No refinement of reasoning is necessary

to reach a conclusion. It is conceded that an agent may accept nothing except cash in payment of a debt to his principal, unless authorized to receive a substitute. It is also conceded that a check is not payment, in the absence of an agreement that it shall be received as payment. The plaintiff never ratified the acts of the bank. The bank never charged Baird's check to his account, and never transmitted either money or a draft to the plaintiff. It is also conceded that the burden of proving payment is upon the defendant. In view of all these conceded propositions I am unable to understand how the facts can shift the burden to the plaintiff and require him to prove that the bank was possessed of funds with which to pay it. The fact that no remittance was made to plaintiff during the eight days the bank remained open must, at least, tend to show a lack of funds with which to make a remittance. Cases in which it was shown that the money was actually in the bank do not sustain the majority opinion, and such are most of those cited, and the checks were charged to the drawer by the banks. To make the check good, two things are vitally necessary: First, that the drawer have credit at the bank; and, second, that the bank have funds with which to honor the check. Both of these elements must be proved, wherever necessary, or payment is not shown. Payment means something besides the delivery of a piece of blank or worthless paper. It means payment in truth, and no substitution of obligations is payment unless accepted as such by the creditor. For authorities in addition to those cited by Judge Bruce bearing upon this subject, see: 2 Bolles, Bkg. 557 (f), 625; Randolph, Com. Paper, §§ 1550, 1551, 1553, 1554; Graham v. Sykes, 15 La. Ann. 49; Devlin v. Chamblin, 6 Minn. 468, Gil. 325; Olcott v. Rathbone, 5 Wend. 491; Born v. First Nat. Bank, 123 Ind. 78; 7 L.R.A. 442; 18 Am. St. Rep. 312, 24 N. E. 173; McMullen v. People's Sav. & L. Asso. 57 Minn. 33, 58 N. W. 820.

In several of the authorities cited in the majority opinion, the holding that the giving of a check and its acceptance by the collecting bank constituted payment is based upon the proposition that it would be an idle ceremony to hand to the owner of the check the money and immediately receive it back, but in such cases the reasoning rests upon the proved or admitted fact that the bank had the money. This proof is lacking in the case at bar. In Devlin v. Chamblin, 6 Minn. 468, Gil.

325, the supreme court of Minnesota says: "The taking of the note or security of a person other than the debtor is not prima facie evidence that the same was taken in payment of a precedent debt. There must be evidence of an express agreement to take such note in payment, in order to give it that effect; and the burden of proof is upon the debtor to show such agreement." And again: "But the whole question would appear to be one of fact for the determination of a jury, rather than of law for the court; and, as the ordinary understanding in contracts of sale is that the vendor shall, in some way or other, get his money, the burden of proof ought to lie on those who seek to show that he agreed to be satisfied with something less."

In Olcott v. Rathbone, 5 Wend. 491, it is said: "Nothing is considered as an actual payment which is not in truth such, unless there be an express agreement that something short of the payment shall be taken in lieu of it. . . . The defendant who has got possession of it (the check) without fraud . . . but without payment, cannot defend himself against a suit on it by showing that fact, unless he shows also an actual payment or an agreement that the small note and check should be taken in full and absolute satisfaction." McMullen v. People's Sav. & L. Asso. 57 Minn. 33, 58 N. W. 820, is on all fours with this case, and the court there held that the collecting bank was the agent of defendant.

In Sutherland v. First Nat. Bank, 31 Mich. 230, it is held that where the maker, instead of attending to the payment of a note himself, intrusts the money to his bankers to do it for him, he thereby makes them his agent; and if they fail to carry out his instructions he cannot saddle the loss upon the holder of the note, who has simply sent the note forward indorsed for collection, and for whom such bankers have performed no act of agency in the premises. And the Michigan court there expressly declines to pass upon the question as to how far the owner would have been bound had the bankers, having the note for collection and the money of the maker to pay it with, canceled the note or changed the credit on their books from the maker to the owner.

In Aultmann v. Lee, 43 Iowa, 404, it was held that a receipt of wheat by an agent for the collection of a note, with an agreement to indorse the amount upon the note, which agreement he failed to carry out, did not constitute payment, in the absence of authority by the

agent to accept wheat, as the payment should have been made in money to discharge the debtor from liability.

The defendant pleaded payment. He started to prove payment, and as a step in that direction proved that he delivered the check of Baird to the bank, and that on Baird's deposit account there was a credit due him of $8,000 from the bank. Here his proof of payment rested, and it is now in effect said that the burden, by this incomplete proof of payment, shifted to the plaintiff, and that it devolved upon him to supply the lacking evidence. There is no pretense that the plaintiff either agreed to receive the check in payment, or that he authorized the bank to do so, or that, in fact, it was ever credited to his account or charged to Baird's account. In fact he knew nothing whatever of the check, and no claim is made that any proceeds of the check were ever sent him. The majority admit that had the plaintiff proven there was no money in the bank with which to honor the check the judgment should be affirmed, but I am unable to see how this series of unauthorized and illegal acts on the part of the defendant and the bank shifts the burden to the plaintiff, which, except for such illegal and unauthorized acts, would remain with the defendant. The burden of proof was at all times on the defendant under his plea of payment, and payment was not made unless there was money in the bank with which to honor the check of Baird. How, then, does the proof of part of the acts necessary to constitute payment, without proof of the other fact necessary, shift the burden? In 2 Wharton on Contracts, § 854, under a discussion of the law of novation, this subject is covered, and it is said that it must be shown from all the facts that it was the intention of the creditor that there might be substituted one debt for the other. And it seems to me that the majority opinion is in direct conflict with provisions of §§ 5273 to 5276, both inclusive, of Rev. Codes 1905. Might it not as well be held that the burden is on the plaintiff in the first instance to negative payment? In fact, I think the bank was the depository of an escrow, and as such the agent of both parties, unless the request of Olson's agent, Baird, for Olson's convenience, that the deed be deposited in the bank, constituted the bank sole agent of Olson, as is held in the McMullen Case, supra. While there could be no question of the correctness of the judgment if the bank was Olson's agent only, yet in view of the conclusion I reach this

is immaterial. To restate the proposition in a sentence, how can the fact that the bank delivered a deed which it had no right to deliver, and received a check which it had no right to receive, overcome the burden cast upon the defendant by his plea of payment, and cast it upon the plaintiff, and compel him to prove that there were funds in the bank with which to make this check, received without authority, good?